NEBRASKA STATE · RAILWAY COMMISSION, APPELLANT, V. ALFALFA BUTTER COMPANY ET AL., APPELLEES.

FILED JUNE 29, 1920.    No. 21048.

1. **Corporations: BLUE SKY LAW: LIMITATIONS.** Section 798, Rev. St. 1913, before the amendment of 1919 (Laws 1919, ch. 259), construed, and *held* to cover Nebraska corporations, created after the law was enacted, for a period of one year only, after which time such corporations were released from the operation of its provisions.

2. **Statutes: CONSTRUCTION.** Relative and qualifying words or phrases are to be applied to the words or phrases immediately preceding, and as not extending to or including other words, phrases or clauses more remote, unless such extension or inclusion is clearly required by the intent and meaning of the context, or disclosed by an examination of the entire act.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE.    *Affirmed.*

*Clarence A. Davis, Attorney General,* and *Hugh La-Master,* for appellant.

*Brome & Ramsey* and *Joseph P. Uvick, contra.*

FLANSBURG, J.

Suit in equity, brought by the Nebraska State Railway Commission, to require, for the alleged benefit of stockholders, an accounting of corporate funds, and to enjoin the defendant company, its officers and agents, from the further sale of defendant's corporate stock. The trial court sustained a demurrer to the petition, and, plaintiff having elected to stand upon the petition, the case was dismissed.    Plaintiff appeals.

Plaintiff claims its authority for this action under the provisions of the so-called "Blue Sky Law" (Rev. St. 1913, secs. 796-811), and the primary question to be determined is whether or not the defendant company is a corporation within the purview of that act.

The petition discloses that this company was incorporated in October, 1915, and had been in existence for more than one year at the time of the commencement of this proceeding. It is contended that the defendant corporation, having been in existence for one year, was exempted from the operation of the act under that provision of section 798, Rev. St. 1913, which reads as follows: "This article shall not include within' its purview sales of stock in Nebraska corporations already in existence, and in Nebraska corporations hereafter created, but which have been in existence one year or more at the time of such sale, and in corporations of other states which have been in existence five years or more at the time of such sale, the majority of stockholders, directors and officers of which were at the time of commencing business, and are at the date of the approval of this article, citizens of the state of Nebraska, nor individual sales of securities owned by the seller prior to the taking effect of this article and purchased by such seller prior to March 1, 1913, when no commission or other compensation of any character whatsoever is to move in the transaction, and no publicity is used in accompanying the sale."

The question is whether or not the words, "when no commission or other compensation of any character whatsoever is to move in the transaction, and no publicity is used in accompanying the sale," refer only to those individual sales of securities by the owner, or whether they refer back to Nebraska corporations already in existence, to Nebraska corporations to be created, and to foreign corporations of five years' existence where a majority of the officers and stockholders are citizens of this state.

The intention of the legislature is the law, and such intention is to be gathered from the meaning of the language used, in the light of the necessity for or reason of the enactment and the objects sought to be attained, and, in determining the meaning of the lan-

guage, its ordinary and its grammatical construction is to be followed, unless an intent appears to the contrary, or unless, by following such construction, the intended effect of the provisions would apparently be impaired.

The evident purpose of this enactment was to stop the sale of stock in companies organized for fraudulent stock exploitation. The frauds thus perpetrated seem to have been considered by the legislature to especially arise in the organization and sale of stock in new companies and promotion schemes, having no proper plan or *bona fide* intent of applying the proceeds from the sale of such stock to the carrying on of any actual business, but for the purpose only of exploiting the public. A statute of this kind is to be given a prospective effect only, rather than a retroactive operation, unless another intent is expressed. It is reasonable to assume that, as to the great number of Nebraska corporations, then existing and actually doing business in this state, no regulation was considered necessary. In such corporations the stock had, for the most part, been sold prior to the time of this enactment, and the great body of such corporations would not, therefore, come within the purpose of the act. For this reason, and for the reason that outstanding stock in such corporations was not intended to be affected, the general exemption of Nebraska corporations, then existing, may have been provided.

As to corporations to be thereafter created in this state, the legislature evidently considered it necessary to prohibit the sale of stock unless the organization and plan of the enterprise to be carried on and the sale of stock should be under the supervision of and be approved by some agency of the state. Such supervision by the railway commission was limited to one year only, no doubt because it was thought such corporations could come into existence only under the supervision and permission and direction of the railway commission,

and that, if properly organized upon a legitimate plan
of business, and with proper assets and valuation repre-
senting the stock, the danger of stock speculation
would have been avoided. By this supervisory power,
the railway commission could, by criminal or other
proceedings, prevent the sale of stock in that class of
companies which were organized for the purpose of ex-
ploitation in the sale of stock and not for legitimate
business.

If, as plaintiff contends, the proviso in question ap-
plies to Nebraska companies created after the enact-
ment, we can see no reasonable purpose of fixing the
one-year limitation, for, if a corporation is to continue
under the operation of the law in all practical manner
the same after the year has elapsed as before, why did
not the legislature leave out the provision of the one-
year limitation entirely? It is true that under plaintiff's
construction such a corporation, after a year, would not
be prohibited from selling stock when no commission or
publicity was resorted to, which sales, prior to that time,
would have been prohibited; but it is during the first
year of a corporation's existence that commissions
and publicity are necessary, and it is then that stock is
not ordinarily sold without such means being employed.
In other words, it is more likely that stocks may be
sold without resort to commissions and publicity after
the first year of the corporation's existence than be-
fore, and, if the corporation was one which the legis-
lature considered should be under the supervision of
the railway commission after a year's existence, it
would seem plausible that the same power of super-
vision should continue, to prevent the fraudulent sale
of stock, regardless of how such sales should be effected.

Having exempted the sale of stock in those corpora-
tions expressly mentioned, it was in the mind of the
legislature that still other stock in other corporations,
not exempted (since all foreign corporations, less than
five years old, and all foreign corporations, a majority

of whose stockholders, officers and directors were not residents of the state, were not exempted), was at that time held by owners who had purchased the same prior to the enactment of the law, and it was considered that those persons should be protected in their property rights in that stock. It was therefore provided that such persons or owners might dispose of their stock in the ordinary course of business, and thus derive a fair value therefrom, but provided that such sales should not be made without a permit and approval of the sale by the state, if agents were employed or publicity used in effecting the sale, since such means might make possible the sale of securities at more than a fair valuation.

That sales of stock by an owner, in the ordinary course of business, are placed upon a different footing from all other sales, is now definitely and expressly stated in the re-enactment of this statute in 1919. Laws 1919, ch. 259.

The language of the statute under consideration is so employed that it is difficult of interpretation, but we feel that the construction contended for by the plaintiff leads to a complex situation, never intended by the legislature.

We have examined the history of this amendment and the form in which it was originally introduced, as disclosed by legislative journals, but find nothing which would control the interpretation of the act, as it emerged after amendments and in final form.

It is urged by plaintiff that other sections of the act provide that permits for the sale of stock were to be issued for one year and were to be renewed or continued from year to year, and that this discloses an intent that all corporations be within the act for all time, but such provisions are entirely consistent with the construction which we have given the statute, as there are many foreign corporations which would continue under the provisions more than one year and indefinitely.

The attorney general of this state, immediately after

this law went into effect, interpreted the statute in the same manner that we have now interpreted it (Opinions Attorney General, 1913-1914, p. 111), and for many years corporations have operated in this state under that interpretation. The contemporaneous construction by such executive officer, whose duty it was to enforce the statute, is entitled to consideration now. 36 Cyc. 1140.

One canon of construction, known as the doctrine of the "last antecedent clause," is that relative and qualifying words or phrases are to be applied to the words or phrases immediately preceding, and as not extending to or including other words, phrases or clauses more remote, unless such extension or inclusion is clearly required by the intent and meaning of the context, or disclosed by an examination of the entire act. In the application of that rule, there is a strict analogy to the case before us in the following decisions: *City of Traverse City v. Township of Blair,* 190 Mich. 313; *Dagan v. State,* 162 Wis. 353; *State v. Scaffer,* 95 Minn. 311; *Zwietusch v. Village of East Milwaukee,* 161 Wis. 519; *Summerman v. Knowles,* 33 N. J. Law, 202; 36 Cyc. 1123.

In the case of *Summerman v. Knowles, supra,* it is said (p. 205): "It would be highly convenient to extend the remedy provided by the third section to all cases where materials are furnished. * * * But mere convenience in attaining a right given by the statute, in an expeditious and inexpensive way, not to be obtained by the application of established rules of construction, ought not to influence this court in dealing with the intent of the legislature, as expressed in a statute. A departure from, or relaxation of, these rules will introduce doubt and uncertainty in the administration of justice. Better by far, resort to the legislature to simplify the remedy in the future, and preserve, in full vigor, those established rules of con-

struction which give certainty and uniformity to the construction of statutes and legal instruments."

It is not within the province of this court to deal with the policy of the law, nor to attempt to extend it, even though an extension should be considered desirable; but its duty is to go so far only as to interpret the law as it stands, and determine what the legislature, at the time of the enactment, intended by it. As is usual in the enactment of statutes covering a new field of legis- lation, there are ambiguities and discrepancies which sometimes leave the law incomplete or inadequate; but if the law, as enacted, has proved inadequate, that is for the legislature to decide, and not for the court.

The statute now involved was by the act of 1919 re- pealed, and is no longer the law in this state, and the difficulties of interpretation, now involved, have become settled by the 1919 law, enacted in the place of this one.

The statute now in question contains another provision (Rev. St. 1913, sec. 806) to the effect that no corporation, having complied with the provisions of the law, shall transact any business after the adoption of any change in its articles or organization, by-laws or plan of doing business, until transcripts of such changes shall be filed with the railway commission. It is contended that the defendant company has, by virtue of this provision, come within the act, since it amended its articles of incorpora- tion after it had been in existence for one year. It seems manifest, from a reading of the section, that this pro- vision was intended to apply to those corporations with- in the purview of the act, and not to those expressly exempted, and that this provision has no application here.

The lower court refused to grant an injunction in this case, and no injunction has been allowed to the present time. By the law of 1919, enacted after this suit was commenced, covering the subject-matter of the statute under consideration, the exemptions of sales of stock, in-

volved here, have been dispensed with, and that law, it appears, affords full relief in the matters here in controversy.

.For the reasons given, the judgment of the lower court is

AFFIRMED.

DEAN, ALDRICH and DAY, JJ., not sitting.