In re Application of Ralph Neudeck for a Writ of Habeas Corpus.
Ralph Neudeck, appellee, v. Walter G. Buettow, Sheriff of Madison County, Nebraska, appellant.
90 N. W. 2d 254

Filed May 16, 1958. No. 34381.

*Clarence S. Beck,* Attorney General, *Leslie Boslaugh,* and *Eugene C. McFadden,* for appellant.

*Daniel D. Jewell,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

WENKE, J.

This is an appeal from the district court for Madison County. It involves a habeas corpus action brought by Ralph Neudeck as relator against Walter G. Buettow, sheriff of Madison County, as respondent. Its purpose is to obtain the discharge of relator from the custody of the respondent on the ground that he is being unlawfully deprived of his liberty. The trial court ordered his discharge. Respondent appealed from that decision on November 27, 1957. We shall herein refer to the parties as the relator and respondent.

The respondent also endeavored to appeal from the order overruling his motion for a new trial. See § 25-1912, R. R. S. 1943. This, however, contemplates that an application for a new trial has been made in accordance with the provisions of section 25-1143, R. R. S. 1943. The transcript shows a hearing was had on relator's application on October 4, 1957. At the conclusion of this hearing the trial court "took said cause under advisement until the 30th day of October, 1957." Thereafter, on October 30, 1957, the court rendered its decision discharging the relator. However, in the meantime, on October 28, 1957, the respondent filed a motion for new trial which the trial court purported to overrule on November 15, 1957.

The time for filing a motion for new trial begins to run from the time the decision is rendered. With certain exceptions not here controlling such requirement is mandatory. See, Molczyk v. Molczyk, 154 Neb. 163, 47 N. W. 2d 405; Frenchman-Cambridge Irr. Dist. v. Ferguson, 154 Neb. 20, 46 N. W. 2d 692; Klause v. Nebraska State Board of Agriculture, 150 Neb. 466, 35 N. W. 2d 104; § 25-1143, R. R. S. 1943. As stated in Frenchman-Cambridge Irr. Dist. v. Ferguson, *supra:*

"A motion for a new trial which is not filed within the time specified by statute is a nullity and of no force and effect." That is the situation here.

"Habeas corpus, under statutes like our own, is a special proceeding, civil in character providing a summary remedy open to persons illegally detained." Tail v. Olson, 144 Neb. 820, 14 N. W. 2d 840. See, also, Selicow v. Dunn, 100 Neb. 615, 160 N. W. 991. Section 29-2823, R. R. S. 1943, provides the appeal in habeas corpus proceedings shall be the same as in civil cases. See, Selicow v. Dunn, *supra;* Tail v. Olson, *supra.*

However, the appeal being within 1 month from the decision rendered October 30, 1957, it is here for our consideration. See § 25-1912, R. R. S. 1943. Since respondent failed to file a valid motion for new trial errors of law occurring at the trial may not be considered by this court. See, Oertle v. Oertle, 146 Neb. 746, 21 N. W. 2d 447; Gillard v. Clark, 105 Neb. 84, 179 N. W. 396. As stated in Gillard v. Clark, *supra:* "We are therefore not at liberty to review any of the questions which were required to be presented to the district court by motion for a new trial. Tait v. Reid, 91 Neb. 235." As stated in Krepcik v. Interstate Transit Lines, 151 Neb. 663, 38 N. W. 2d 533: "The right of the Legislature to authorize an appeal within a time limited from the rendition of the judgment and a trial in this court de novo upon the entire record made, including the evidence taken in the district court, without the filing of a motion for a new trial, has been sustained and the procedure enforced." See, also, Birdsley v. Kelley, 159 Neb. 74, 65 N. W. 2d 328.

In view of the foregoing the following from Birdsley v. Kelley, *supra,* is here applicable: "In the light of these rules the district court examined the evidence adduced at the preliminary hearing and came to the conclusion and adjudicated that this evidence was insufficient upon which to hold appellee to the district court for trial. It is from this conclusion and adjudica-

tion that the appeal herein is taken. This requires an examination and review of the evidence."

Relator was charged in two counts with violation of the Nebraska "Blue-Sky Law." The county court of Madison County, wherein the charges were filed, bound the relator over to the district court for Madison County to stand trial on each of the two charges made against him. Section 29-506, R. R. S. 1943, provides, insofar as here material, that: "If upon the whole examination * * * it shall appear that an offense has been committed and there is probable cause to believe that the person charged has committed the offense, the accused shall be committed to the jail of the county in which the same is to be tried, there to remain until he is discharged by due course of law * * *." The purpose of this action is to test the sufficiency of the evidence adduced at the preliminary hearing conducted in the county court of Madison County pursuant to which relator was held for trial in the district court.

"The sufficiency of evidence adduced at a preliminary hearing to hold an accused to answer for a crime with which he is charged may be raised and tried in habeas corpus proceedings." State ex rel. Pribyl v. Frank, 165 Neb. 239, 85 N. W. 2d 328. See, also, Hoffman v. State, 164 Neb. 679, 83 N. W. 2d 357; Cotner v. Solomon, 163 Neb. 619, 80 N. W. 2d 587; Birdsley v. Kelley, *supra.*

"In a habeas corpus proceeding instituted for the purpose of testing the sufficiency of evidence taken at a preliminary examination to require a person to be tried on a criminal charge, the court will not weigh the evidence but will only inquire as to the existence of evidence to sustain the charge." Cotner v. Solomon, *supra.* See, also, Birdsley v. Kelley, *supra.*

"Where the testimony shows that an offense has been committed and there is testimony tending to show that the accused committed the offense, the court, on a writ of habeas corpus, will not discharge him." State ex

rel. Flippin v. Sievers, 102 Neb. 611, 168 N. W. 99. See, also, Cotner v. Solomon, *supra*.

"Evidence that would justify a committing magistrate in finding that probable cause existed for the detention of a defendant need not necessarily be sufficient to sustain a verdict of guilty when he is placed on trial; * * *." Rhea v. State, 61 Neb. 15, 84 N. W. 414. The court therein went on to say: "It is further urged, however, that the evidence discloses that for his compensation Rhea was to receive a certain per cent of the money so collected by him; that he was, therefore, a part owner of the property and could not be guilty of embezzlement of that which belonged to him. Whether the point would be a good defense upon the trial we will not stop to inquire. Sufficient to say that there was evidence enough to make out a case of probable cause."

Count I charged that relator did: "Willfully and feloniously offer for sale and sell to Walter Ries a certain security to-wit: A preorganization subscription in a corporation to be known as Brucenite Corporation, when the said security was not authorized for sale or exchange by the Department of Banking of the State of Nebraska."

The evidence adduced at the preliminary hearing shows that on March 12, 1956, in Norfolk, Madison County, Nebraska, relator, and others, sold to Walter Ries, a rancher and farmer of Atkinson, Nebraska, 20,000 shares of capital stock in the Brucenite Corporation for the sum of $1,000, which corporation was to be incorporated in the near future, without having first obtained authority from the Department of Banking of the State of Nebraska to sell such securities. See §§ 81-315 and 81-318, R. R. S. 1943.

Section 81-314, R. R. S. 1943, provides: "No person or persons shall issue, sell, exchange, offer to sell or exchange, or solicit or promote the offer, sale or exchange, within the State of Nebraska, of any security or securities or interest therein, unless and until said

security, securities or interest therein, are specifically exempt pursuant to the provisions of section 81-312 from the provisions of sections 81-302 to 81-346, or unless the security, securities or interest therein, at the time of the issue, sale, exchange or offer, solicitation or promotion of the issuance, sale or exchange, then are authorized for sale or exchange by the Department of Banking, and unless the person or persons selling, exchanging or offering to sell or exchange, or soliciting or promoting the sale or exchange of such security, securities or interest therein, by the terms or provisions of said sections are then lawfully privileged to do so."

And section 81-333, R. R. S. 1943, provides, insofar as here material, that: "Any person who, either or both as issuer, principal, salesman, agent, broker, underwriter, officer, director or individual, shall issue, sell, assign, transfer or exchange any security or securities, or offer to or negotiate for the issuance, sale, assignment, transfer or exchange of any security or securities, or interest therein, or by any means or through any medium, offer or attempt to take subscriptions for or promote the offering, issuance, sale, assignment, exchange or transfer of any securities, not specifically exempt from the provisions of said sections, within this state, without authority from the department as provided for in section 81-318, or who shall cause or participate therein, shall be guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the penitentiary for not more than ten years."

With regard to the Blue-Sky Law we said in Nebraska State Railway Commission v. Alfalfa Butter Co., 104 Neb. 797, 178 N. W. 766: "The evident purpose of this enactment was to stop the sale of stock in companies organized for fraudulent stock exploitation. The frauds thus perpetrated seem to have been considered by the legislature to especially arise in the organization and sale of stock in new companies and promotion schemes, having no proper plan or bona fide intent of applying

the proceeds from the sale of such stock to the carrying on of any actual business, but for the purpose only of exploiting the public." And then went on to say: "As to corporations to be thereafter created in this state, the legislature evidently considered it necessary to prohibit the sale of stock unless the organization and plan of the enterprise to be carried on and the sale of stock should be under the supervision of and be approved by some agency of the state."

The intention of the Legislature, which must necessarily be here controlling, provides in section 81-318, R. R. S. 1943, insofar as here material, that: "If it appears to the Department of Banking that applicant has complied with all the requirements of law * * * and that the enterprise conducted or contemplated is not a mere scheme of a promoter or promoters to obtain money or property at the expense of the purchasers of the aforesaid securities * * * the department shall issue to the applicant such written order as the department in its discretion may deem necessary, essential and expedient in the existing case, authorizing for the period of one year, or for such lesser period of time subsequent to the date of entry of such order, the issuance or sale of securities described and requested in the application, and in such amount as the department may determine; otherwise, an order denying the application shall be entered; * * *." See, also, Nebraska State Railway Commission v. Alfalfa Butter Co., *supra*. As stated in Nebraska State Railway Commission v. Alfalfa Butter Co., *supra*: "It is not within the province of this court to deal with the policy of the law, nor to attempt to extend it, even though an extension should be considered desirable; but its duty is to go so far only as to interpret the law as it stands, and determine what the legislature, at the time of the enactment, intended by it."

But relator contends the factual situation presented by the evidence adduced at the preliminary hearing brings the situation within subsection (14) of section

81-312, R. R. S. 1943, and therefore specifically exempt from the provisions of section 81-333, R. R. S. 1943. In this respect section 81-312, R. R. S. 1943, provides: "Except as in sections 81-302 to 81-346 specifically provided, the provisions of said sections shall not apply to: * * * (14) Capital stock of a corporation being organized, wherein the stock is issued to and retained by the incorporators and not offered for sale to others; * * *."

Section 81-313, R. R. S. 1943, provides: "In any action, civil or criminal, where any person relies for his defense upon any of the exemptions provided for in section 81-312, the burden of proof to establish such exemption shall be upon such person." See Robbins v. State, 144 Neb. 43, 12 N. W. 2d 152. This burden of proof did not require relator to affirmatively claim the exemption. It was available to him under the plea of not guilty and in regard thereto he was entitled to the benefit of all the evidence adduced.

The evidence adduced at the preliminary hearing shows that relator was acquainted with Walter Ries; that relator talked to Ries by telephone on March 11, 1956, and wanted him to take some stock in a corporation they were organizing to operate a sand mine down in Oklahoma; that Ries came to Norfolk the following morning and there met with relator and others in a hotel room; that the sand mine and how the sand could be used was explained to Ries; that he was then informed a corporation, to bear the name of Brucenite Corporation, was being formed and that he could get in on the ground floor and get some of its capital stock as an investment; that he was to become one of its incorporators, although it is evident Ries did not know exactly what that meant; that Ries was informed that the capital stock was not to be offered for sale to anyone except incorporators; that Ries bought 20,000 shares of the capital stock for $1,000, which he intended to keep, and thus become one of the persons interested in forming the corporation; and that Ries was never asked to

nor did he sign any articles of incorporation. In fact, there is no evidence showing the corporate organization was ever completed, ever started, and no stock therein was ever issued to Ries or anyone else.

There are two additional statutory provisions that relate to the situation here presented. Section 81-304, R. R. S. 1943, insofar as here material, provides: "The words and phrases used in sections 81-302 to 81-346 shall, unless the context otherwise indicates, have the following meaning: (1) The term 'security' or 'securities' shall include each and all of the following: * * * (c) * * * a preorganization certificate or subscription * * *." And, as stated in section 21-107, R. R. S. 1943: "The articles of incorporation shall be signed by each of the incorporators * * *." We think these two provisions are here controlling and clearly indicate what the Legislature meant by the use of the word "incorporators" as found in subsection (14) of section 81-312, R. R. S. 1943. Since Ries is not shown to be an "incorporator" within the meaning of this statutory subsection we think the county court was correct in binding Neudeck over to the district court for trial on Count I.

We have read the cases and other authorities cited by relator giving a broader classification as to whom should be included as incorporators in relation to the organization of corporations. However, in view of what the Legislature has said in regard thereto we are necessarily bound by the latter, that is, to be an incorporator within the meaning of the statutes requires that such person must sign the articles of incorporation. If the classification fixed by the Legislature is too restrictive then relief therefrom must come from it but it cannot be had by judicial opinion. See 1 Fletcher, Cyclopedia Corporations (Perm. Ed.), c. 4, § 81, p. 278.

Count II charges that relator: "Did then and there unlawfully willfully and feloniously offer for sale and sell to Walter Ries a certain security to-wit: A preorganization subscription in a corporation to be known

as Brucenite Corporation, when he, the said Ralph Neudeck, was not lawfully privileged to sell such security under the statutes of the State of Nebraska."

The evidence adduced at the preliminary hearing shows that no permit was ever issued by the Department of Banking of the State of Nebraska to relator as a broker or salesman of securities.

Insofar as here material the Blue-Sky Law provides as follows:

"No broker shall, within the State of Nebraska, sell or exchange or offer for sale or exchange any securities, or by advertisement or otherwise profess to engage in the business of selling or exchanging or offering for sale or exchange securities, whether or not such securities may be exempted under section 81-312, until such broker shall have secured from the Department of Banking a permit to do business as broker." § 81-305, R. R. S. 1943.

"Such permit shall entitle each broker to sell, exchange, offer for sale or negotiate, in the State of Nebraska, such securities as are exempt under section 81-312, or the sale of which has been authorized by a permit or order from the Department of Banking; * * *." § 81-306, R. R. S. 1943.

"Any issuer or broker may appoint one or more salesmen to sell or solicit the sale or exchange of securities within this state, but no such salesman shall sell or solicit the sale or exchange of securities within this state unless and until he shall have secured from the Department of Banking a permit to do business as a salesman." § 81-309, R. R. S. 1943.

"Such permit shall entitle the salesmen to sell, offer for sale, exchange, offer for exchange, or negotiate in this state such securities as are exempt under section 81-312, or securities the sale of which at the time of sale has been, and then is, authorized for sale by permit from the Department of Banking; * * *." § 81-310, R. R. S. 1943.

"No person or persons shall issue, sell, exchange, offer to sell or exchange, or solicit or promote the offer, sale or exchange, within the State of Nebraska, of any security or securities or interest therein * * * unless the person or persons selling, exchanging or offering to sell or exchange, or soliciting or promoting the sale or exchange of such security, securities or interest therein, by the terms or provisions of said sections are then lawfully privileged to do so." § 81-314, R. R. S. 1943.

Section 81-338, R. R. S. 1943, which has application to the foregoing provides: "Any person, firm or corporation, their agents, employees or servants who shall violate any of the provisions of sections 81-302 to 81-337 for which penalties are not otherwise specifically provided, shall be deemed guilty of a felony, and upon conviction thereof shall be fined in any sum not more than one thousand dollars or shall be imprisoned in the penitentiary not more than ten years, or both."

Section 81-304, R. R. S. 1943, by subsections (5) and (6) thereof, defines a broker and salesman as follows:

"(5) The word 'broker' shall mean and include every person, corporate or real, other than an issuer or salesman, who in this state engages either for all or part of his time directly or through an agent or agents, salesman or salesmen, in the business of selling any securities issued by another person, or purchasing or otherwise acquiring such securities from another for the purpose of reselling them, exchanging them, or of offering them for sale or exchange to the public, or offering, buying, selling or exchanging, or otherwise dealing or trading in securities as principal or as agent for commission, earnings or at a profit, or who deals in futures or differences in market quotations or prices or values of any securities, or accepts margins on purchases or sales or pretended purchases or sales of such securities.

"(6) The word 'salesman' or 'salesmen' shall mean and include every person, other than the issuer or

broker, employed, appointed or authorized by any issuer or broker to sell or solicit the sale of securities, or the exchange of securities in any manner within this state, whether the contract of sale or exchange of such securities shall be consummated in this state or elsewhere."

Reading the foregoing provisions together, as we must since they all relate to the same subject matter, and relating them to the other sections of the Blue-Sky Law, it becomes evident that it was the intention and purpose of the Legislature to thereby, through the Department of Banking, regulate the business of dealing in securities, including both those requiring the authorization of the Department of Banking and those exempt from that requirement under the provisions of section 81-312, R. R. S. 1943, by licensing those engaging therein as brokers and salesmen regardless of whether or not they are operating on a full or part time basis. See, § 81-337, R. R. S. 1943; Guynn v. Shulters, 223 Miss. 232, 78 So. 2d 114, 50 A. L. R. 2d 1088. As stated in 53 C. J. S., Licenses, § 27, p. 556: "In the absence of a statute specifically so providing, the performance of a single act, or even a number of isolated acts, pertaining to a particular business or occupation does not constitute engaging in, or carrying on, such business or occupation within the meaning of a law imposing a license or tax thereon unless an intent to engage in the business is clearly apparent, although where a statute so intends a single transaction may constitute the carrying on of the business or occupation licensed or taxed."

The evidence adduced at the preliminary hearing fails to establish relator was engaged in or intended to engage in the business of offering for sale or selling securities to the public on either a full or part time basis within the meaning of the Blue-Sky Law applicable thereto since it only establishes that he participated in the one sale to Walter Ries which has hereto-

fore been referred to. In view thereof we find he should not have been bound over to the district court for trial on Count II and that the court was correct in discharging him therefrom.

It should, of course, be understood, as stated in Van Buren v. State, 65 Neb. 223, 91 N. W. 201, that: "A preliminary hearing, however, is in no sense a trial in which defendant's rights, in respect to their guilt or innocence, are adjudged, determined or prejudiced, whether a hearing results in the discharge of an accused person, or in holding him to appear at the district court to answer the accusation made against him." See, also, State ex rel. Flippin v. Sievers, *supra;* In re Application of Garst, 10 Neb. 78, 4 N. W. 511; Michaelson v. Beemer, 72 Neb. 761, 101 N. W. 1007. The same is true of a habeas corpus proceeding based thereon.

We therefore reverse the judgment of the trial court and direct it to return relator to the custody of respondent to stand trial in the district court for Madison County on Count I.

REVERSED AND REMANDED WITH DIRECTIONS.