STATE OF NEBRASKA, APPELLANT, v. STEVEN R. JENNINGS, APPELLEE.

238 N. W. 2d 477

Filed February 11, 1976. No. 40272.

Paul D. Empson and Randall A. Rinquest, for appellant.

John K. Sorensen of Raymond & Olsen, for appellee.

Roger C. Lott, for amicus curiae.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

The county attorney of Box Butte County brings error proceedings to this court pursuant to sections 29-2315.01 to 29-2316, R. R. S. 1943, from a decision and order of the District Court of that county sustaining defendant's motion made at the close of the State's evidence to dismiss the charges against the defendant that he "did knowingly or intentionally possess a controlled substance, to-wit: Amphetamine, its salts, optical isomers, or salts of its optical isomers." The court found that the defendant did knowingly or intentionally possess a quantity of amphetamine, but further found that the State failed to prove that the quantity of amphetamine possessed by defendant was such a quantity that it had a "potential for abuse associated with a stimulant effect on

the central nervous system." The court found the defendant not guilty, and discharged him. Since defendant Jennings has been placed in legal jeopardy by virtue of his trial, our decision today will not affect the judgment of the trial court. § 29-2316, R. R. S. 1943; State v. Faircloth, 181 Neb. 333, 148 N. W. 2d 187 (1967). Under the foregoing statutes, the scope and purpose of our review in these error proceedings is to provide an authoritative exposition of the law for use as a precedent in similar cases which may now be pending or which may subsequently arise. § 29-2316, R. R. S. 1943; State v. Taylor, 179 Neb. 42, 136 N. W. 2d 179 (1965).

Because of the importance of the issue involved, the Nebraska County Attorney's Association has filed a brief amicus curiae in this court in support of the State of Nebraska, the appellant. We have concluded that the District Court erred in its interpretation of the applicable law, and reverse its ruling in that regard.

The Uniform Controlled Substances Act was adopted in this state in 1971 as L.B. 326, following intensive study and analysis by the Nebraska Crime Commission and the Legislature. It was modeled after and closely followed the federal act adopted in 1970. Title 21 U. S. C., § 801, et seq. In State v. Neal, 187 Neb. 413, 191 N. W. 2d 458 (1971), we stated: "L.B. 326 is a comprehensive act designed to regulate the use, possession, manufacture, distribution, delivery, and production of drugs and controlled substances. The act generally is patterned after Public Law 91-513, 91st Congress, H.R. 18583, being the Federal Comprehensive Drug Abuse Prevention and Control Act of 1970." The Nebraska act appears as sections 28-459 and 28-4,115 to 28-4,142, R. S. Supp., 1974. The "controlled substances" covered by the act are enumerated in Schedules I through V, of section 28-4,117.

As originally enacted in 1971, L.B. 326, listed amphetamines in Schedule III, as did also the federal act enacted in 1970. Under the federal act, however, the

United States Attorney General is given authority after investigation and findings by the Director of the Bureau of Narcotics and Dangerous Drugs, to administratively add to or delete drugs from the controlled substances schedules, or to change drugs from one schedule to another. This was not permitted under the Nebraska act because of possible constitutional questions arising by virtue of Lincoln Dairy Co. v. Finigan, 170 Neb. 777, 104 N. W. 2d 227 (1960). Under the Nebraska act it is necessary that such changes be made by the Legislature. In 1971, following an investigation by the Bureau of Narcotics and Dangerous Drugs, amphetamines were reclassified in the federal act and changed from Schedule III to Schedule II. The Director of the Bureau of Narcotics and Dangerous Drugs found "that amphetamines and methamphetamines and their salts, optical isomers, and salts of their optical isomers: (1) Have a high potential for abuse; (2) Have a currently accepted medical use in treatment in the United States with severe restrictions; (3) That abuse of these substances may lead to severe psychological dependence." See Vol. 36, No. 130, Federal Register, p. 12735 (July 7, 1971). Following the example of the federal government, the Nebraska Legislature in 1974 also amended section 28-4,117 of the Nebraska act, the avowed purpose of the amendment, according to the legislative history of the bill, was to make the schedules in the Nebraska act conform with those of the federal act. The amendment changed the listing of amphetamines from Schedule III to Schedule II. This clearly evidences an intention and desire on the part of the Nebraska Legislature to achieve uniformity between the two acts.

Schedule II (c) with which we are concerned in this case, as set out in section 28-4,117, lists as a controlled substance: "Any material, compound, mixture, or preparation which contains any quantity of the following substances having a potential for abuse associated with a stimulant effect on the central nervous system: (1)

Amphetamine, its salts, optical isomers, and salts of its optical isomers; * * *." (Emphasis supplied.) The precise question presented for determination is whether the phrase "having a potential for abuse associated with a stimulant effect" modified the word "substances" or the word "quantity." The trial court found that the phrase modified the word "quantity." The result of such interpretation would be that in a prosecution for possession of amphetamines the State would be required to prove, in addition to the other elements of the offense, that the defendant possessed a *quantity* of amphetamines that had a potential for abuse associated with a stimulant effect on the central nervous system. We disagree with the District Court's interpretation and rule that it is not necessary in a prosecution for possession of amphetamines for the State to prove that the defendant possessed an amount of the substances sufficient to create a potential for abuse associated with a stimulant effect on the central nervous system.

The cardinal rule for the interpretation of statutes is that the court determine the legislative intent in enacting the provision in question. Matzke v. City of Seward, 193 Neb. 211, 226 N. W. 2d 340 (1975); State v. Neal, *supra*. The legislative intent may be determined from a general consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the questioned language is classified. Matzke v. City of Seward, *supra*. The reasons for the enactment of the statute, and the purposes and objects of the act may also be guides in the attempt to give effect to the main intent of the lawmakers. Anstine v. State, 137 Neb. 148, 288 N. W. 2d 525 (1939). A review of the legislative history of the Uniform Controlled Substances Act makes it clear that one of the reasons for the passage of the act was the rapid and tremendous growth of drug use and the problems of law enforcement and control, both in the legal and illegal channels of distribution. It was the

thought of the Nebraska Legislature that the laws governing drugs and controlled substances be as uniform as possible throughout the states. Therefore, so far as possible, it wished to update the Nebraska laws to conform with the recent revisions of the federal act by creating a system of drug distribution and control permitting maximum state regulation and efficiency of enforcement.

In light of the foregoing factors, it would seem clear that the legislative intent was that amphetamines, as such, be considered as controlled substances. It is to be noted that Schedule II(c) is a part of section 28-4,117 entitled "Controlled substances; enumerated." If the Legislature had wanted to place a quantity restriction on possession of these drugs it could have set a volume or weight limit, as it did for certain codeine, morphine, and certain other opium derivative drugs as set out in Schedule III(c), and Schedule V. No other provision of the act indicates any intention of the Legislature to require a minimum amount before classifying a substance as controlled. It is an elementary rule of construction that all the parts of an act relating to the same subject shall be considered together, and not each by itself. Behrens v. State, 140 Neb. 671, 1 N. W. 2d 289 (1941).

Moreover, the rules of syntax and sentence construction clearly indicate that the interpretation by the trial court was erroneous. It is a rule of interpretation that relative and qualifying words and phrases are to be applied to the words or phrases immediately preceding and as not extending to or including other words, phrases, or clauses more remote, unless the extension or inclusion is clearly required by the intent and meaning of the context, or disclosed by an examination of the entire act. Nebraska State Railway Commission v. Alfalfa Butter Co., 104 Neb. 797, 178 N. W. 766 (1920). Under this rule, known as the rule of the last antecedent clause, a referential or qualifying phrase refers

solely to the last antecedent, absent a showing of contrary intent. It is clear in the case before us that the words "having a potential for abuse" immediately follow the word "substances" and modify that noun, and not the word "quantity" used earlier in the sentence.

Defendant argues, however, that unless the words "having a potential for abuse" modified "quantity," they are rendered mere surplusage. We do not agree. The phrase serves as an indication of what kind of substances the Legislature may add to Schedule II(c) in the future. See United States v. Nickles, 509 F. 2d 810 (5th Cir., 1975), interpreting analogous classifications of depressants under the federal act, Title 21 U.S.C. 801, et seq. We find support for this point of view in section 28-4,138, R. S. Supp., 1974, which provides that the Department of Health and the Division of Drug Control shall carry out educational and research programs with reference to controlled substances, and in connection with such research may: "(a) Establish methods to assess accurately the effects of controlled substances and to identify and characterize controlled substances *with potential for abuse*; * * *." (Emphasis supplied.) We have held that a word or phrase repeated in a statute will bear the same meaning throughout the statute, unless a different intention appears. Behrens v. State, *supra;* 2 Lewis' Sutherland, Statutory Construction (2d Ed., 1904), § 399, p. 758. See, also, Seward County Rural Fire Protection Dist. v. County of Seward, 156 Neb. 516, 56 N. W. 2d 700 (1953).

We have also examined the case law concerning the particular language in question, or analogous language contained in schedules of depressants, both federal and state, and find that the overwhelming weight of authority supports the interpretation urged by the county attorney. In Doyle v. State, 511 P. 2d 1133 (Okla. Cr. App., 1973), the same phrase before us today was ruled to be "descriptive of the essential nature of the prohibited derivatives," and not indicative of any "necessity

of proving a quantative analysis of the contraband."
511 P. 2d at 1136. Other courts have interpreted cor-
responding language contained in Schedule III(b) deal-
ing with certain depressants. Each of these courts has
ruled that the "abuse" and "effect" language modified
"substance" and thus did not place upon the State any
burden of proof with reference to potency or quantity.
United States v. Nickles, 509 F. 2d 810 (5th Cir., 1975),
interpreting Title 21 U. S. C. 841 (a)(1), the federal
counterpart to section 28-4,117, Schedule III (b)(7),
R. S. Supp., 1974; People v. Kincade, 61 Mich. App. 498,
233 N. W. 2d 54 (1975); People v. Busby, 56 Mich. App.
389, 224 N. W. 2d 322 (1974), c.f., State v. Jefferson,
391 S. W. 2d 885 (Mo., 1965), involving similar language
but not the language of the uniform act; State v. Allesi,
216 N. W. 2d 805 (N. D., 1974); State v. King, 9 Wash.
App. 389, 512 P. 2d 771 (1973). We also call attention
to State v. McElroy, 189 Neb. 376, 202 N. W. 2d 752
(1972), a case decided under our Uniform Controlled
Substances Act but involving possession of cocaine which
is listed in a schedule not employing the words "quantity
with a potential for abuse." Notwithstanding the factual
difference, this court in that case specifically stated the
rule in Nebraska to be that: "In the absence of a legis-
lative declaration to the contrary, a quantity for a po-
tential for abuse is not an essential element of the of-
fense of unlawful possession of a controlled substance."

Finally, we point out that our Legislature in conform-
ity with its expressed desire that laws governing drugs
and controlled substances be as uniform as possible
throughout the states, included in the Nebraska act
section 28-4,141, R. S. Supp., 1974, providing specifically
that the act shall be so applied and construed as to
effectuate its general purpose to make uniform the law
among those states which enact it. There is little dif-
ficulty in following this mandate, as the decisions in
other jurisdictions are consonant with the general intent
of the Nebraska Legislature as evidenced by the purpose

expressed in the act itself and by the legislative history of the act.

The ruling of the District Court is reversed.

REVERSED.