STATE OF NEBRASKA, APPELLEE, V. JACK D. FLETCHER,
APPELLANT.

378 N.W.2d 859

Filed December 27, 1985.   No. 85-282.

Richard Scott, for appellant.

Robert M. Spire, Attorney General, and Lynne R. Fritz, for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

SHANAHAN, J.

Jack D. Fletcher appeals his conviction and sentence in the district court for Red Willow County regarding delivery of an exceptionally hazardous drug (amobarbital). We affirm.

Fletcher, age 65 and a resident of Indianola, was self-employed in the business of repairing and cleaning septic tanks. For various health problems, Fletcher received a variety of prescription drugs, including Lilly's F14, a yellow capsule containing ephedrine and Amytal. A two-count information charged Fletcher with delivery of an exceptionally hazardous drug (amobarbital) to Olive Trobaugh on December 11, 1983,

and possession of that drug on December 30, 1983, with intent to deliver such controlled substance, all contrary to Neb. Rev. Stat. § 28-416(2)(a) (Cum. Supp. 1984).

On December 4, 1983, Olive Trobaugh, incarcerated in the Red Willow County jail and awaiting arraignment on charges of auto theft and assault on a police officer, requested a meeting with the Red Willow County attorney and police. During that conversation, Trobaugh stated she knew some local people trafficking in drugs and offered to serve as an undercover agent in exchange for reduction or dismissal of charges pending against her. Although the county attorney made no promise regarding the charges, Trobaugh was released from jail and contacted Fletcher to purchase some "yellows" from him.

Before going to Fletcher's house on December 11, Trobaugh met with law enforcement officers, who placed a microphone on Trobaugh so that conversations with her might be electronically monitored. Trobaugh testified that during her visit at Fletcher's residence, she had a conversation with Fletcher, who asked "if I had the money, and I asked him if he had the stuff." Although the initially agreed transaction was payment of $120 for 130 "yellows," Trobaugh had only $100 and asked Fletcher to give her a "break because it was around the holidays." Fletcher responded that he would "double them ["yellows"] beings it's Christmas," accepted $100 from Trobaugh, and handed her 260 yellow capsules in a brown paper sack. Later, Trobaugh delivered the paper sack and the yellow capsules to the police. The State did not offer the tape recording of the conversation between Trobaugh and Fletcher. No police officer testified during Fletcher's trial.

The State called pharmacists and a physician to establish the ingredients or composition of the yellow capsules which Trobaugh had obtained from Fletcher. The "yellows" were identified as capsules of Lilly's F14 containing 25 milligrams of ephedrine sulfate and 50 milligrams of Amytal—a trade name for amobarbital. Ephedrine is not a narcotic but is a stimulant used to dilate bronchial tubes to make the exchange of air easier in one suffering from an "acute flareup of asthma." To alleviate fear of an asthmatic unable to breathe during a bronchial spasm and somewhat counteract anxiety as an effect of the ephedrine,

Amytal, a "hypnotic," was used as a sedative. It was virtually impossible for a layman to separate the ephedrine from the Amytal (amobarbital) found in Lilly's F14. Amobarbital is a Schedule II controlled substance and an exceptionally hazardous drug, according to Nebraska statutes. See Neb. Rev. Stat. §§ 28-405(d)(1) [Schedule II] and 28-401(35)(d) (Cum. Supp. 1984).

Fletcher requested the following instruction: "In weighing the testimony of persons employed to find evidence against the accused, you should exercise greater care than in the case of a witness who is wholly disinterested." The court rejected Fletcher's requested instruction and, instead, instructed the jury as follows:

> You are the sole judges of the credibility of the witnesses and the weight to be given to their testimony. In determining the weight which the testimony of the witnesses is entitled to receive, you should consider:
>
> 1. Their interest in the result of the suit, if any;
>
> 2. Their conduct and demeanor while testifying;
>
> 3. Their apparent fairness or bias or relationship to the parties, if any such appears;
>
> 4. Their opportunity for seeing or knowing the things about which they have testified;
>
> 5. Their ability to remember and relate accurately the occurrences referred to in their evidence;
>
> 6. The extent to which they are corroborated, if at all, by circumstances or the testimony of credible witnesses;
>
> 7. The reasonableness or unreasonableness of their statements;
>
> 8. All other evidence, facts, and circumstances proved tending to corroborate or contradict such witnesses.

Fletcher was acquitted of criminally possessing amobarbital on December 30 but was convicted of criminally delivering that drug to Trobaugh on December 11 in violation of § 28-416(1)(a) and (2)(a). After giving Fletcher credit for 102 days—the aggregate of the time confined in the county jail awaiting trial and custodial time during evaluation by the Department of Correctional Services—and after a presentence investigation and report, the court sentenced Fletcher to imprisonment for a

term of 1 year in the Nebraska Penal and Correctional Complex.

Fletcher contends the district court committed five errors, namely: (1) Refusal of Fletcher's tendered instruction regarding Trobaugh's credibility and weight to be given to her testimony as an informant; (2) Admitting into evidence the tape recording of the conversation between Trobaugh and Fletcher, evidence obtained in violation of Fletcher's constitutional guarantee against an unreasonable search; (3) Insufficient evidence to sustain the conviction; (4) Inconsistent verdicts; and (5) An excessive sentence.

In claiming that his tendered instruction should have been given regarding credibility of an undercover agent and the weight to be accorded an undercover agent's testimony, Fletcher relies on a statement found in *State v. Goff*, 174 Neb. 548, 559, 118 N.W.2d 625, 632 (1962): " 'Where informers, detectives, or other persons employed to hunt up testimony against the accused are called to testify against him, he is entitled to an instruction to the jury that in weighing their testimony greater care should be exercised than in the case of witnesses who are wholly disinterested.' " (Citing *Garcia v. State*, 159 Neb. 571, 68 N.W.2d 151 (1955).) In Fletcher's case, however, the court gave an instruction in the language of NJI 1.41 as far as applicable to Trobaugh's credibility and the weight to be given by the jury to her testimony. We note that *State v. Goff, supra*, antedates adoption of Nebraska Jury Instructions [NJI] (West 1969). With the background about Trobaugh's involvement in obtaining evidence against Fletcher, the instruction given by the court (NJI 1.41) adequately informed the jury concerning factors affecting Trobaugh's credibility and weight to be given to her testimony as an undercover agent. NJI 1.41 has supplanted the instruction previously authorized in *State v. Goff, supra*, which is disapproved. Under the circumstances there was no error by the district court in refusing Fletcher's requested instruction.

Next, Fletcher complains that the tape recording of Trobaugh's conversation with him was improperly admitted into evidence. Although the tape recording was marked as an exhibit, the bill of exceptions does not indicate or reflect that

such tape recording was offered by the State and received into evidence. Furthermore, regarding Trobaugh's testimony, Fletcher's counsel asserted that Trobaugh was on probation (a situation not substantiated by the record) and directed the court's attention to Neb. Rev. Stat. § 29-2262.01 (Reissue 1979), which provides:

> A person placed on probation by a court of the State of Nebraska or an inmate of any jail or correctional or penal facility who has been released on parole shall be prohibited from acting as an undercover agent or employee of any law enforcement agency of the state or any political subdivision.

In further remarks to the court, Fletcher's counsel stated: "This talk about the exclusionary rule, it's nice to listen to, but that's not what we're talking about. . . . We are not alleging anything under the Fourth or Fifth Amendment. What we are alleging is that the statute says she [Trobaugh] is incompetent to testify." Thus, at trial Fletcher contended that Trobaugh, on probation while acting as an undercover agent for police, was statutorily incompetent to be a witness against Fletcher. See Rule 601 (general rule of competency) of the Nebraska Evidence Rules, Neb. Rev. Stat. § 27-601 (Reissue 1979). Consequently, no question about Fletcher's constitutional guarantee against an unreasonable search was raised during trial regarding the tape-recorded conversation.

> [O]nly issues properly presented to and passed upon by the district court may be raised on appeal to this court. In the absence of plain error, where an issue is raised for the first time in the Supreme Court, it will be disregarded inasmuch as the district court cannot commit error in resolving an issue never presented and submitted for disposition.

*Haeffner v. State*, 220 Neb. 560, 564, 371 N.W.2d 658, 661 (1985). Fletcher does not assign error to the district court's ruling that Trobaugh was a competent witness in the prosecution of Fletcher. Rather, for the first time on appeal Fletcher raises a question about the constitutional permissibility of the tape recording. Because an issue concerning constitutionally permissible evidence was not raised

during Fletcher's trial, we must disregard Fletcher's alleged error regarding the tape recording.

Fletcher's argument concerning insufficiency of evidence to sustain his conviction is based on the quantity of Amytal contained in the "yellows" delivered to Trobaugh, that is, the small quantity of amobarbital in each capsule precludes abuse of the drug. Section 28-405(d) [Schedule II] provides in part:

> *Any* material, *compound*, *mixture*, or *preparation which contains any quantity* of the following substances having a potential for abuse associated with a depressant effect on the central nervous system, including their salts, isomers, and salts of isomers whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designations: (1) Amobarbital . . . .

(Emphasis supplied.)

Fletcher's argument is a reproduction of the argument presented in *State v. Jennings*, 195 Neb. 434, 238 N.W.2d 477 (1976), where the defendant argued that the State must prove that the quantity of the controlled substance had a potential for abuse. In *Jennings* this court stated: "[I]t is not necessary in a prosecution for possession of amphetamines for the State to prove that the defendant possessed an amount of the substances sufficient to create a potential for abuse associated with a stimulant effect on the central nervous system." *Id.* at 438, 238 N.W.2d at 480. Further, after recognizing the Legislature's prerogative regarding a prohibition based on quantity or quality of a controlled substance, this court stated in *Jennings*: "The phrase [substances having a potential for abuse] serves as an indication of what kind of substances the Legislature may add to Schedule II(c) in the future." *Id.* at 440, 238 N.W.2d at 481. We find the quality of a controlled substance, amobarbital, rather than the quantity of the substance, is determinative in the prosecution of the criminal charge against Fletcher, as was the situation in *Jennings*. Therefore, there was sufficient evidence that the substance delivered by Fletcher in violation of law was a hazardous drug.

In his next to the last assignment of error, Fletcher claims that acquittal on the charge of possessing a hazardous drug on December 30 is inconsistent with his conviction for delivering a hazardous drug to Trobaugh on December 11.

> The general rule which is followed by this court is that where the several offenses charged in a multicount indictment or information involve factual variations, such as different times, dates, places, property, or victims, the finding on one count will not ordinarily be held inconsistent with that on any other count.

*State v. Eagle Deer*, 205 Neb. 249, 251, 286 N.W.2d 770, 771 (1980).

The gravamen in each count of the information was distinct. The first count pertained to criminal delivery of a controlled substance on December 11, while the second count concerned prohibited criminal possession of a controlled substance on December 30. Acquittal regarding the offense alleged to have occurred on December 30 is not inconsistent with conviction of the offense alleged on December 11. Therefore, Fletcher's penultimate assignment of error is without merit.

In his final assignment of error Fletcher complains about the sentence imposed upon conviction, imprisonment for a term of 1 year in the Nebraska Penal and Correctional Complex. Before imposing sentence the district court considered Fletcher's age, health, absence of a prior criminal record, and information from Fletcher's friends and neighbors. The district court commented that the sentence imposed should not be one which would "diminish the consequences of the crime, will not deprecate the feeling in the community, will provide a proper punishment with a fair treatment" and, therefore, imposed a sentence of imprisonment for a term of 1 year. Granting probation, as opposed to imposing a sentence of incarceration, is a matter left to the sound discretion of the trial court, and, absent a showing of abuse, the trial court's denial of probation will not be disturbed on appeal. *State v. Last*, 212 Neb. 596, 324 N.W.2d 402 (1982). Criminal delivery of an exceptionally hazardous drug, here, amobarbital, is a Class II felony punishable by a term of imprisonment of 1 year to 50 years. See § 28-416(2)(a) and Neb. Rev. Stat. § 28-105(1) (Reissue 1979). Under the circumstances we find no abuse of discretion by the district court in the sentence imposed upon Fletcher.

The judgment of the district court is affirmed.

AFFIRMED.

BOSLAUGH, J., concurs in the result.