REQUESTED BY: Senator Stan Schellpeper Nebraska State Legislature
You have requested our opinion on several questions pertaining to LB 1255, as amended by the General Affairs Committee. The amendments to LB 1255 propose to amend Neb. Rev. Stat. § 2-1228 (Cum. Supp. 1994) to include a provision specifying "that a licensed racetrack which has conducted live racing for at least five consecutive years in the prior ten years may conduct interstate simulcasting without conducting live racing for a period not to exceed two years," provided the organization representing a majority of licensed horse owners and trainers at the most recent live race meet at the racetrack gives its consent. LB 1255, as amended, § 4. You have asked us to address three questions relating to the interpretation of the interstate simulcasting provisions in § 2-1228, in order to assist you in determining the need for the amendatory language in LB 1255.
The statutory provisions pertaining to interstate simulcasting were originally enacted in 1989. 1989 Neb. Laws, LB 591, §§ 7, 8. Section 7 of LB 591 (codified at
Neb. Rev. Stat. § 2-1228 (Supp. 1989)), provided:
 Any racetrack issued a license under sections 2-1201 to 2-1223 (1) conducting primarily quarterhorse races in the year immediately preceding the year for which application is made, regardless of the total number of days of live racing conducted in such year, or (2) conducting primarily thoroughbred horseraces in the year immediately preceding the year for which application is made which conducted live racing on at least ninety percent of the days for which it was authorized to conduct live racing in 1988 unless the commission determines that such racetrack was unable to conduct live racing on the required number of days due to factors beyond its control, including, but not limited to, fire, earthquake, tornado, or other natural disaster, may apply to the commission for an interstate simulcast facility license. An application for such license shall be in a form prescribed by the commission and shall contain such information, material, or evidence as the commission may require. Any racetrack issued an interstate simulcast facility license may conduct the interstate simulcast of any horserace permitted under its license, and parimutuel wagering shall be allowed on such horserace.
In 1993, § 2-1228 was amended. 1993 Neb. Laws, LB 471, § 3. LB 471 altered the requirement that, in order for a racetrack conducting primarily thoroughbred racing to be eligible to apply to the commission for an interstate simulcast facility license, the racetrack had to conduct live racing on at least ninety percent of the days for which it was authorized to hold live racing in 1988, absent a Commission determination that it was unable to do so due to factors beyond its control. LB 471 reduced the number of live racing days which the racetrack was required to conduct in the previous year to be eligible to apply for an interstate simulcasting facility license toseventy percent of the days for which it was authorized to hold live racing in 1988. In addition, LB 471 added the following language to § 2-1228:
 The commission shall not authorize interstate simulcasting for any racetrack pursuant to sections 2-1201 to 2-1223 unless all of the thoroughbred racetracks together applied for and received authority to conduct at least one hundred eighty live racing days in the calendar year in which the application is made. If any racetrack conducts live racing for less than seventy percent of the days assigned such racetrack in 1988, (a) such racetrack shall be precluded from conducting interstate simulcasts and (b) the number of live racing days conducted by such racetrack shall be subtracted from an amount equal to seventy percent of all the days assigned such racetrack in 1988 and the amount remaining shall be deducted from the one-hundred-eighty-day total required by this section. If any racetrack ceases to conduct live racing, seventy percent of the days assigned such racetrack in 1988 shall be deducted from the one-hundred-eighty-day total required by this section.
Your questions, of course, pertain to the proper interpretation of the interstate simulcasting provisions contained in § 2-1228. Prior to addressing your specific questions, it is appropriate to review certain basic tenets of statutory interpretation.
A fundamental principle of statutory construction is to attempt to ascertain legislative intent and to give effect to that intent. County of Lancaster v. Maser,224 Neb. 566, 400 N.W.2d 238 (1987). The reasons for the enactment of a statute, and the purposes and objects of the act, may be guides in attempting to give effect to the intent of lawmakers. State v. Jennings, 195 Neb. 434,238 N.W.2d 477 (1976). A sensible construction will be placed upon a statute to effectuate the object of legislation, rather than a literal interpretation that would have the effect of defeating legislative intent. Worley v. City ofOmaha, 217 Neb. 77, 348 N.W.2d 123 (1984). Effect must be given, if possible, to all the several parts of a statute.NC+ Hybrids v. Growers Seed Ass'n, 219 Neb. 296,363 N.W.2d 362 (1985). As far as practicable, courts must give effect to the language of a statute and reconcile different statutory language so that parts of a statute are consistent, harmonious, and sensible. Rosnick v.Marks, 218 Neb. 499, 357 N.W.2d 186 (1984). In construing a statute, resort may be had to the history of its passage for the purpose of determining legislative intent.Georgetown Ltd. Partnership v. GeotechnicalServices, Inc., 230 Neb. 22, 430 N.W.2d 34 (1988).
Your first question is whether § 2-1228 authorizes the State Racing Commission ["Commission"] to issue an interstate simulcast license to a racetrack not conducting live racing if the racetrack conducted live racing in the prior year on at least seventy percent of the days it conducted live racing in 1988, or whether § 2-1228 should be interpreted to prohibit a racetrack from engaging in interstate simulcasting in the year in which it does not conduct a live race meet, even if the racetrack conducted live racing for the required number of days in the previous year.
As noted above, § 2-1228 originally provided that, for a thoroughbred racetrack to be eligible for licensing to conduct interstate simulcasting, it was required to conduct live racing on at least ninety percent of the days it conducted live racing in 1988 "in the year immediately preceding the year for which application" was made. 1989 Neb. Laws, LB 591, § 7. In 1993, this language was amended by replacing the requirement that a racetrack seeking an interstate simulcast facility license conduct live racing in the year preceding application on at least ninety percent of the days it held live racing in 1988 with a requirement that it conduct live racing in the year preceding application on at least seventy percent of the days it conducted live racing in 1988. 1993 Neb. Laws, LB 491, § 3. In addition, LB 471 added new language to § 2-1228, including a provision stating that, "[i]f any racetrack conducts live racing for less than seventy percent of the days assigned such racetrack in 1988, (a) such racetrack shall be precluded from conducting interstate simulcasts. . . ."
Thus, while part of § 2-1228 provides that a racetrack's eligibility to conduct interstate simulcasting is based on the racetrack's conduct of live racing on at least seventy percent of the live racing days held in 1988 in the preceding year, another part indicates that, if a racetrack does not do so in the year in which application is made, it may not conduct interstate simulcasting. The apparent conflict between these provisions creates an ambiguity which makes it difficult to construe the legislative intent behind the statute.
The Committee Statement to LB 471 reflects that the committee amendments to the bill proposed to amend § 2-1228
"to provide that licensed Nebraska racetracks must conduct live horseracing on at least 70% of the days they were authorized to conduct live horseracing in 1988 in order to be granted an interstate simulcasting license in the following year."Committee Records on LB 417, 93rd Neb. Leg., 1st Sess., 2 (January 28, 1993). During floor debate on the bill, references were made to the changing of the "90 percent" requirement to "70 percent" as the main impetus behind the legislation. Floor Debate on LB 471, 93rd Neb. Leg., 1st Sess. 890 (Statements of Sens. Schellpeper and Will); 892 (Statement of Sen. Crosby). The amendment adding the additional language to § 2-1228, including that portion stating that a racetrack which conducted live racing for less than seventy percent of the days assigned in 1988 would be "precluded from conducting interstate simulcasts," was described as part of an "agreement" or "compromise" between horsemen, breeders, and the racetracks, designed to insure that all racetracks would continue to conduct at least 180 days of live racing in a year in order for interstate simulcasting to be permitted. Floor Debateon LB 471, 2432 (Statement of Sen. Schellpeper); 2433 (Statement of Senator Will). With regard to racetracks which did not conduct live racing, the amendment was explained as providing that a portion of those racing days "would be deducted . . . from the 180 day requirement. . . ." Id. at 2432 (Statement of Sen. Schellpeper).
The above-referenced history indicates that the Legislature, in amending § 2-1228 in 1993, intended to reduce the number of days of live racing which a racetrack must conduct in the preceding year from 90 percent to 70 percent of the number of days of live racing conducted by the racetrack in 1988 for purposes of determining a racetrack's eligibility to conduct interstate simulcasting. In spite of the apparently inconsistent language contained in the other portion of the amendment, referred to above, there is no indication that the Legislature intended to alter the concept of basing eligibility on a percentage of the number of days of live racing a racetrack held in the "preceding year." In construing a statute, no sentence, clause, or word should be rejected as meaningless or superfluous.Weiss v. Union Ins. Co., 202 Neb. 469, 276 N.W.2d 88
(1979). Thus, it appears that, under § 2-1228, a racetrack's eligibility to receive an interstate simulcast license is based on its conduct of live racing in the "preceding year" on at least seventy percent of the days it conducted live racing in 1988.
We caution, however, that this interpretation is not certain, and that the statute is susceptible to a construction that racetracks which do not conduct live racing for the required number of days in the "calendar year," or year of application, may not conduct interstate simulcasting. While we do not believe that this is the result intended by the Legislature, it is not an unreasonable construction of the statute. Accordingly, to the extent there is any doubt as to the proper construction of §2-1228, enactment of legislation such as LB 1255, as amended, would certainly be advisable, in order to clarify the Legislature's intent in this regard.
Your second question is whether, if a licensed racetrack does not conduct live racing in 1996 for at least seventy percent of the days it conducted live racing in 1988, the racetrack would be eligible to conduct interstate simulcasting in 1997.
Based on the interpretation of § 2-1228 given above, a racetrack which does not conduct live racing in a year for at least seventy percent of the days it conducted live racing in 1988 is not eligible to apply for an interstate simulcast facility license in the subsequent year. The only exception would be if the Commission were to find that the racetrack "was unable to conduct live racing on the required number of days due to factors beyond its control, including, but not limited to, fire, earthquake, tornado, or other natural disaster, . . . ." Neb. Rev. Stat. § 2-1228 (Cum. Supp. 1994). Thus, absent a Commission finding that this exception is applicable, a racetrack which does not conduct live racing for the number of days required by § 2-1228 during 1996 will not be eligible to receive an interstate simulcast license for 1997.
Your third and final question is whether the language in § 2-1228, allowing the Commission to determine that a racetrack unable to conduct live racing for the required number of days due to "factors beyond its control, including, but not limited to, fire, earthquake, tornado, or other natural disaster," permits the Commission to authorize interstate simulcasting in either a year in which a racetrack does not conduct a live race meet or the subsequent year, if the reason the racetrack does not conduct a live race meet is due to "economic conditions which may or may not be beyond the control of the racetrack."
In an informal opinion to the Commission dated October 15, 1992, we expressed our view regarding the interpretation of the language in § 2-1228 empowering the Commission to issue an interstate simulcast facility license to a racetrack which did not qualify based on the number of live racing days it conducted in the preceding year due to "factors beyond [the racetrack's] control. . . ." Op. Att'y Gen. No. I92-078 (October 15, 1992). At that time, we stated:
 In our view, the language employed in § 2-1228(2) does not demonstrate an intent by the Legislature to restrict the Commission to consideration of only whether a `fire, earthquake, tornado, or other natural disaster' prevented a racetrack from reaching the threshold requirement of conducting live racing for ninety [now seventy] percent of the days on which live racing was conducted at the racetrack in 1988 in order to permit a finding by the Commission of the existence of `factors beyond [a racetrack's] control' for purposes of applying this exception. The statute grants authority to the Commission to `determine that [a] racetrack was unable to conduct live racing on the required number of days due to factors beyond its control, including, but not limited to, fire, earthquake, tornado, or other natural disaster. . . .' (Emphasis added). In our opinion, the emphasized language evinces an intent by the Legislature to allow circumstances other than natural disasters as being within the scope of the Commission's authority to consider in determining whether `factors beyond [a racetrack's] control' exist within the exception provided under § 2-1228(2). The determination of whether such factors exist in a given case must, of course, be made by the Commission.
Id. at 2 (emphasis in original).
Consistent with our prior opinion, we do not believe that the factors which the Commission is authorized to consider in determining if "factors beyond [a racetrack's] control" exist for purposes of the exception in § 2-1228 are limited to circumstances in the nature of "natural disasters." The statute gives the Commission discretion to determine what circumstances may constitute "factors beyond [a racetrack's] control" by stating that the Commission is "not limited to" consideration of the specific types of factors designated. With respect to your question, we believe it is inappropriate for us to speculate as to whether Commission consideration of factors such as "economic conditions" would be improper in its exercise of the power granted. That is a matter which the statute commits to the reasoned discretion of the Commission.
Very truly yours,
 DON STENBERG Attorney General
 L. Jay Bartel Assistant Attorney General
cc: Patrick J. O'Donnell Clerk of the Legislature
APPROVED BY:
Don Stenberg
Attorney General