STATE OF NEBRASKA, APPELLEE, v. JAMES EARL GOFF, APPELLANT.

118 N. W. 2d 625

Filed December 14, 1962. No. 35316.

Mark J. Ryan, for appellant.

Clarence A. H. Meyer, Attorney General, and Cecil S. Brubaker, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SIMMONS, C. J.

In this case, defendant was charged with having in his possession and control narcotic drugs, contrary to law. He was also charged with being an habitual criminal. He was tried and found guilty of the narcotic drugs charge. In a separate proceeding, he was found to be an habitual criminal. He was sentenced to 10 years imprisonment. He appeals.

We will set out the errors assigned and discussed in the order in which we reach them. We reverse the judgment of the trial court and remand the cause for further proceedings.

The defendant offered no evidence. Accordingly, the summary of the evidence here is taken from the evidence offered by the State.

We will refer herein to certain officers of the Sioux City, Iowa, police as Iowa police. We will refer to officers of the South Sioux City, Nebraska, police as the Nebraska police.

The defendant here was acquainted with a Nebraska man and wife named Romesburg. They will be referred

to herein as the Romesburgs. Defendant also was acquainted with the daughter and son-in-law of the Romesburgs named Nordgren. We will refer to him by that name. The Nordgrens lived in South Sioux City, Nebraska.

September 30, 1961, the Romesburgs were visiting at the Nordgrens. Defendant was also visiting there that day. Nordgren testified that during that day, the defendant told him three times that he had in his possession a large quantity of narcotics. Nordgren testified that he did not believe what the defendant had told him. During the day, the defendant and the Romesburgs drove into Sioux City and returned. Mrs. Nordgren worked at a dancehall in Sioux City. She was taken there to her work in the early evening. About 9 p.m., the Romesburgs, Nordgren, and the defendant drove to Sioux City and to the dancehall. An Iowa policeman was working there. He was not on duty as a policeman.

It seems that there was some loud talk at a table occupied by the Romesburgs, the defendant, and Nordgren. Mrs. Nordgren cautioned them to be quiet. They went outside where Nordgren testified that defendant threatened to shoot him and tried to open the trunk of his car. No blows were struck, and no particular notice was paid to this quarrel by others.

About that time, Nordgren told the Iowa—not on duty—policeman that defendant had in his possession a large quantity of narcotics. The policeman radioed this information to an Iowa detective who, in plain clothes, came to the dancehall. The defendant was pointed out to the detective as the one having narcotics in his possession. The detective made no effort to arrest defendant at that time.

The defendant and the Romesburgs, in defendant's car, started to return to South Sioux City, and did return there at a slow rate of speed. The detective started to follow. Just before leaving the dancehall, Nordgren

told the detective to be careful for the defendant had a loaded revolver under the front seat of his car. The detective radioed his headquarters for help and started to follow the defendant's car. He lost the defendant's car in the traffic. He then started for South Sioux City and made contact with the defendant's car at Sixth Street and Dakota Avenue in South Sioux City. He made no effort to arrest defendant there. He radioed the Nebraska police to meet him at Ninth Street and Dakota Avenue. Upon reaching that point, the Iowa detective forced defendant's car to the curb, got out of his own car, came to defendant's car, and told defendant to get out of his car, that he was an officer, and that defendant was under arrest. He searched the defendant and found nothing. He then started to search the car. About that time an Iowa policeman, in uniform, came. The Romesburgs were ordered out of the car and a thorough search was made of the car. Nothing was found. The uniformed man put the keys to the car back in the ignition, he having removed them during the search.

The Iowa detective then took the keys and started to open the trunk. About that time, two Nebraska policemen arrived. The two Iowa police started to search the trunk. Defendant protested and tried to prevent the search. He was pulled away from the car by the uniformed policemen. Also, about that time, defendant started to run. The Iowa policeman pursued with a Nebraska policeman following. They ran defendant down, caught him, forcibly returned him, and "draped" him over the hood of his car.

In the meantime, the Iowa detective found and removed from the car a "ditty" bag which he opened, and found therein a loaded revolver and a number of bottles and packages. He took possession of them. He had defendant and his car driven to the South Sioux City, Nebraska, police station where he ordered the defendant locked up. He, with Nebraska police, then placed

identifying marks on each of the articles in the bag and on the bag itself, and delivered them to Nebraska police.

The Iowa detective then returned to Iowa. He came back a few days later when he accompanied Nebraska officers to Omaha where the bag and its contents, minus the loaded revolver, were delivered to a United States laboratory for testing as to narcotic content. There they remained until the trial of this case on February 8, 1962.

In the meantime, on January 19, 1962, defendant filed a motion to suppress the alleged narcotic articles on the ground that the search was made without a search warrant and that the articles were illegally seized. He moved that they be suppressed and excluded from evidence.

A hearing was had. A transcript of the testimony is in the bill of exceptions. The trial court found that a "quantity of narcotic drugs was found in the trunk of defendant's car," and that the search was not illegal; and denied the motion to suppress.

We have then a situation where an Iowa policeman arrests a man in Nebraska without warrant, searches his automobile without warrant, finds certain evidence which it is claimed is in violation of Nebraska laws, turns his prisoner over to Nebraska police for prosecution in Nebraska, and returns to Iowa.

This brings us to where we can state and determine defendant's assignments of error.

Defendant contends that the search and seizure were in violation of the Fourth Amendment to the Constitution of the United States and Article I, section 7, of the Constitution of this state. The two constitutional provisions are substantially identical. We copy only the Constitution of the United States which is as follows: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath

or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Fourth Amendment, Constitution of the United States.

In Haswell v. State, 167 Neb. 169, 92 N. W. 2d 161, we held: "Information pertinent to an issue in a criminal case is admissible in evidence on the trial thereof notwithstanding it was obtained in an irregular or illegal manner. * * * A violation of the constitutional guarantee concerning search and seizure does not render information acquired thereby inadmissible on the trial of a criminal case against the person from or concerning whom the information was procured." That decision was filed October 3, 1958.

On June 19, 1961, the Supreme Court of the United States decided Mapp v. Ohio, 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081. It held all evidence obtained by searches and seizures in violation of the Fourth Amendment to the federal Constitution is, by virtue of the due process clause of the Fourteenth Amendment guaranteeing the right to privacy free from unreasonable state intrusion, inadmissible in a state court. The Fourth Amendment's right of privacy is enforceable against the states through the due process clause of the Fourteenth Amendment.

We have just held in State v. Easter, *ante* p. 412, 118 N. W. 2d 515, that: "All evidence obtained by searches and seizures in violation of the federal Constitution is inadmissible in a criminal trial in the courts of this state." Here it is contended that the evidence is inadmissible both by virtue of the Nebraska and United States Constitutions. Our holding in Haswell v. State, *supra,* is modified to the extent necessary to make it in accord with the decision of the Supreme Court of the United States in Mapp v. Ohio, *supra.*

The defendant, using the denial of his motion to suppress, as the vehicle, presents the issue here.

The trial court based its denial of the motion to suppress upon a finding that narcotics were found in de-

fendant's possession. We have searched the evidence of that hearing and there is not one word in it identifying or referring to anything found in defendant's car as narcotics.

The State relies on section 29-416, R. R. S. 1943, as authority for the arrest and argues that the arrest, without a warrant, being authorized by law, the search was incidental thereto and not unreasonable. Section 29-416, R. R. S. 1943, is as follows: "Any member of a duly organized state, county or municipal peace unit of another state of the United States who enters this state *in fresh pursuit, and continues within this state in such fresh pursuit,* of a person, in order to arrest him on the ground that he is believed to have committed a felony *in such other state,* shall have the same authority to arrest and hold such person in custody as has any member of any duly organized state, county or municipal peace unit of this state, to arrest and hold in custody a person on the ground that he is believed to have committed a felony in this state." (Emphasis supplied.)

It is patent that the right of an out-of-state officer to arrest is dependent on the "in fresh pursuit" limitation and also the "he is believed to have committed a felony in such other state" provision (here Iowa). It becomes important in view of the provisions of section 29-417, R. R. S. 1943 (not mentioned by the State), and section 29-420, R. R. S. 1943, defining fresh pursuit. Section 29-420, R. R. S. 1943, is as follows: "The term 'fresh pursuit,' as used in sections 29-416 to 29-420, shall include fresh pursuit as defined by the common law, and also the pursuit of a person who has committed a felony or who is reasonably suspected of having committed a felony. It shall also include the pursuit of a person suspected of having committed a supposed felony, though no felony has actually been committed, if there is reasonable ground for believing that a felony has been committed. Fresh pursuit, as used herein, shall

not necessarily imply instant pursuit, but pursuit without unreasonable delay."

The reference to felony in section 29-420, R. R. S. 1943, obviously relates back to the "felony in such other state" provision of section 29-416, R. R. S. 1943.

Neither party has undertaken to define "fresh pursuit" to us or cite its meaning. Our search reveals the definition from Black's Law Dictionary found in 37 C. J. S., Fresh, footnote 65 (7), p. 1379, which is as follows: " 'Fresh pursuit,' as pursuit instituted immediately and with intent to reclaim or recapture, where an animal has escaped, or a thief is *fleeing* with stolen goods, etc." (Emphasis supplied.)

The definition rests on White v. State, 70 Miss. 253, 11 So. 632, wherein it was held: "What is fresh pursuit must be determined by circumstances, and where, as in this case, a felony is committed at night, discovered in the morning and the officer immediately follows and overtakes the felon, *who is attempting to escape*, it is not necessary that he shall have a warrant for his arrest; * * *." (Emphasis supplied.)

We find no evidence here that the defendant was "attempting to escape" or had any information that he was being pursued, and no evidence that he was fleeing to avoid arrest. On the contrary, the State's witnesses testified that defendant was driving along an interstate highway at a slow rate of speed and intending to take the Romesburgs to their home and then return into Iowa. The Iowa detective testified that the defendant was not fleeing from arrest or threatened arrest when he was arrested and his car searched.

The State also overlooks the provisions of section 29-417, R. R. S. 1943, which outlines the procedure after arrest under the provisions of section 29-416, R. R. S. 1943. None of the procedures there outlined were followed in this case.

We find no evidence here that justifies a finding of "fresh pursuit" in this case.

The State also relies on section 28-472.01, R. R. S. 1943, which provides that "any peace officer" having probable cause to believe that any automobile is being used for the transportation of narcotic drugs shall make search thereof with or without warrant. The fault of the argument is patent. The Iowa policeman making the search was not an officer of Nebraska.

The defendant contends that the trial court erred in not sustaining his motion to suppress. We need not enter into a discussion of the ramifications of a motion to suppress.

When the State offered the Iowa detective as a witness at the trial and produced the ditty bag as an exhibit, the defendant asked leave to cross-examine to lay a foundation, to show that the witness "had no search warrant and other things connected with it." The court ruled that the "admissibility of evidence was determined at a prior hearing" and denied the defendant's request. The witness then proceeded to produce and identified the contents of the bag. Again on cross-examination, the defendant asked the detective if he had a search warrant. The court sustained a State objection and also overruled an offer to prove that the witness had no search warrant, had made no attempt to get one, and had only hearsay information to sustain his search without a warrant.

The defendant then pointed out that the exhibits were not produced at the hearing on the motion to suppress and that he had no opportunity to examine the witness as to them at that hearing. The court then held that defendant had no right to lay a further foundation to the offer of the exhibits in evidence.

On further cross-examination, this witness testified that the exhibits had been in Omaha from early October in the possession of United States chemical analysts and had only been brought back on the morning of the trial. The State offered the bag and its contents in evidence, each bearing separate numbers. The defendant

objected and the court reserved its ruling until "the contents have been identified."

The analyzing chemist then identified nine of the exhibits as containing narcotic drugs. These were admitted in evidence, along with the gun but not loaded shells, over the objection of defendant that the evidence was unlawfully taken. The remaining exhibits were not admitted in evidence.

We hold that the search and seizure here was an unreasonable exercise of power and hence unlawful under the Constitutions of this state and the United States. The constitutional provisions were intended to prevent the procedure presented here. The evidence so secured was inadmissible. The trial court permitted prejudicial error in denying the defendant the right of the cross-examination and in admitting the evidence.

Two other things require attention. At the beginning of the trial, after the jury had been impaneled and sworn, the defendant moved to exclude the State's witnesses from the courtroom until after they had testified. The trial court, apparently, in the presence of the jury said, "I think perhaps it is nonsense. I have no patience with that type of motion whatsoever. However, in this case under the existing circumstances since the defendant feels he is being persecuted so unfairly I am going to give him the benefit of the motion and sustain the motion."

Save by direct language, we can think of no more effective way that the trial court could have told the jury that the State's witnesses were to be believed and would not alter their evidence so as to harmonize with those who testified first. The remark was prejudicial error even though the motion was sustained.

As late as Coyle v. Stopak, 165 Neb. 594, 86 N. W. 2d 758, we held: "The judge presiding at a trial must conduct it in a fair and impartial manner. He should refrain from making any unnecessary comments or remarks during the course of a trial which are calculated

to influence the minds of the jury. A remark or comment which is shown to be prejudicial to the rights of the party complaining, or which is such that it may be assumed prejudice will result therefrom, is fatal to the validity of the trial."

There are times when it is well to revert to the reasoned wisdom of some of our earlier decisions. As early as Binfield v. State, 15 Neb. 484, 19 N. W. 607, we quoted with approval from Greenleaf on Evidence, section 432, that an order excluding witnesses so that they may be examined out of the hearing of each other is rarely withheld.

In Chicago, B. & Q. R. R. Co. v. Kellogg, 54 Neb. 138, 74 N. W. 403, we held: "The practice of causing unexamined witnesses, except those called as experts, to be sequestered, so that they may not hear the testimony of the witness being examined, is a good one, as it tends to elicit the truth and promote the ends of justice."

The above holding was approved in Maynard v. State, 81 Neb. 301, 116 N. W. 53, Roberts v. State, 100 Neb. 199, 158 N. W. 930, Ann. Cas. 1917E 1040, and Pribyl v. State, 165 Neb. 691, 87 N. W. 2d 201. The error here is not in the exclusion of the witnesses but in the remark of the court in sustaining the defendant's motion. It was not only error but prejudicial.

The defendant requested an instruction to the effect that in weighing testimony of detectives, police officers, and other witnesses "employed for the purpose of procuring testimony against the accused," greater care should be exercised than in the case of witnesses who are wholly disinterested. He assigns error for the refusal to give the instruction. We find no evidence that any witness here was employed for the purpose of procuring testimony against the accused. The proposed instruction confuses two rules.

We held in Garcia v. State, 159 Neb. 571, 68 N. W. 2d 151: "The mere fact that a witness in a criminal prosecution is a regular public law enforcement officer

does not entitle an accused to an instruction that the jury, in weighing his testimony, should exercise greater care than in weighing the testimony of other witnesses. * * * Where informers, detectives, or other persons employed to hunt up testimony against the accused are called to testify against him, he is entitled to an instruction to the jury that in weighing their testimony greater care should be exercised than in the case of witnesses who are wholly disinterested." See, also, Grandsinger v. State, 161 Neb. 419, 73 N. W. 2d 632.

We find no error in the refusal to give the requested instruction.

In Wamsley v. State, 171 Neb. 197, 106 N. W. 2d 22, we held: "A defendant in a criminal prosecution has a constitutional right to a public trial by an impartial jury, and when it appears to this court that a defendant has not been accorded a fair trial its duty is to grant a new trial." In the course of the opinion, we quoted with approval from State v. Long, 127 Mont. 523, 268 P. 2d 390, as follows: "Whatever the status of a defendant in a criminal case may be and whatever be the nature of the crime with which he is charged, each and all are entitled to the same fair trial guaranteed by our Constitution. The Constitution makes no distinction between defendants but treats all alike, as must this court, whose duty it is to see that defendants in criminal cases brought before us are accorded a fair trial."

The record here requires that we reverse the judgment and remand the cause for further proceedings in accord with this opinion.

REVERSED AND REMANDED.