Albert SIX FEATHERS, Appellant
(Defendant),

v.

The STATE of Wyoming, Appellee
(Plaintiff).

No. 5190.

Supreme Court of Wyoming.

May 29, 1980.

Richard H. Honaker, Wyoming Public Defender, and Michael H. Schilling, Appellate Counsel, Wyoming Public Defender Program, Cheyenne, for appellant.

John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen. Criminal Division, and Renee R. Magee, Legal Intern, Cheyenne, for appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice.

Appellant-defendant was found guilty by a jury of violation of § 6–4–606, W.S.1977 (false imprisonment) and of § 6–7–301, W.S. 1977 (grand larceny). He was sentenced to a term of one to five years in the penitentiary on the grand larceny conviction and to 360 days in the Weston County jail on the false imprisonment conviction, the sentences to run concurrently. He appeals from the judgment rendered on the verdict and words the issues on appeal as follows:

"I. Whether an arrest by Wyoming law enforcement officers in South Dakota is an illegal arrest in the absence of fresh pursuit and whether failure of those officers to comply with South Dakota laws requiring review of the arrest for its legality is a denial of due process under the law.

"II. Whether the improper comment by the State in closing argument constitutes plain and reversible error."

We affirm.

There is considerable conflict in testimony concerning the facts involved in this case and the following recitation of facts is in accordance with the rule regularly followed by this court and as stated in *Harris v. State*, Wyo., 487 P.2d 800, 801 (1971), to the effect that:

"In passing upon the sufficiency of the evidence to support a verdict of guilty, an appellate court will not weigh conflicting evidence nor consider the credibility of the witnesses; and it must view the evidence in a light most favorable to the prosecution and determine questions of law as to whether there is substantial evidence, direct or circumstantial, or both, which, with the reasonable inferences that may be drawn therefrom, will sustain the verdict." (Footnote omitted.)

And see *Repkie v. State*, Wyo., 583 P.2d 1272 (1978).

Appellant and three companions (one man and two women) were enroute from Upton to Newcastle on the evening of February 2, 1979 when their automobile quit

working. A passing bus took them to Osage. At a bar in Osage, appellant encountered Mike Kropatch, a previous acquaintance, who agreed to give appellant and his three companions a ride to Newcastle.

Appellant and his three companions had consumed about two cases of beer before arriving at Osage, and they continued to drink intoxicating beverages in Osage. They took a six pack of beer with them when they left Osage at about 12:30 to 12:45 a. m. on February 3, 1979.

As they approached the outskirts of Newcastle, appellant told Kropatch that there was a knife at his back and ordered him to drive to the country club. Kropatch was the manager of the country club. When they arrived at the country club, Kropatch was ordered to make drinks for appellant and his companions. There was considerable testimony concerning the happenings at the country club relative to the false imprisonment charge, but it is of little relevance to the issues here presented. It is sufficient to note that appellant and his companions threatened to kill Kropatch if money was not paid to them; that they took money from Kropatch's billfold and from the cash register; that they loaded a box of food and liquor from the country club into Kropatch's automobile; that they subdued Kropatch when he attempted to escape from them; that he did escape on the second attempt and ran out the door; that Kropatch saw them drive off in his automobile and "take the by-pass highway headed east"; and that he called the police at 2:46 a. m.

Appellant and his companions drove Kropatch's car east from Newcastle on Highway 16 until they ran out of gasoline about three miles after crossing the Wyoming-South Dakota state line. After receiving the call from Kropatch, the police began searching for appellant, his companions and Kropatch's automobile. At 3:27 a. m., a driver of a delivery truck reported to the police that occupants of a motor vehicle at a point on Highway 16 had tried to secure his help in obtaining gasoline and that they were intoxicated. The police went about two miles beyond the point referred to by the driver and found appellant and his companions in Kropatch's car, which was being pushed by a passing motorist in a pickup truck. The Newcastle police apprehended appellant and his companions at that time and place. Fifteen or twenty minutes later, South Dakota law enforcement officers arrived.

The Weston County Sheriff asked appellant if he wanted to be taken to Newcastle or to Hot Springs, South Dakota. Appellant asked where the two female companions were to be taken. The sheriff told him that they wanted to go to the place appellant decided to go. Appellant then agreed to return to Newcastle. The South Dakota law enforcement officers transported appellant to Newcastle, where appellant executed, at the sheriff's request and before a notary public, a form document titled "Agreement to Accompany Without Protest" which read in part:

"* * * I * * * certify that I freely and voluntarily agree to accompany any Authorized Officer as a prisoner, from the County of Custer, State of So. Dak. to Newcastle, Wy. for the purpose of answering any charge pending against me.

"Furthermore, I hereby waive all formality, and will return to Newcastle, Wy. with the said Authorized Officer without the Governor's requisition, as other papers legally necessary in such cases * *."

At the conclusion of appellee's case, appellant requested direction from the court concerning the extent appellant could be cross-examined concerning his prior conviction for involuntary manslaughter. The court directed that appellant could be asked if he was convicted of a felony, the type of felony and when. On cross-examination of appellant, the following questions were asked and answers given:

"Q. * * * have you ever been convicted of a felony?

"A. Yes, I have.

"Q. When were you convicted of a felony?

"A. In '72.

"Q. What was the offense of which you were convicted?

"A. Involuntary manslaughter."

The following was said during the final argument of the prosecuting attorney:

"MR. WHITLEY: * * *

"Counsel left you with the thought that he thought that—what type of man was this? 'Is this man capable of kidnapping?' Was his question, because he would hold his girlfriend—a woman he calls his wife—and try to warm her. What type of man is this who would also kill another man—

"MR. DUMBRILL: Just a moment—

"MR. WHITLEY: —because he stands convicted of manslaughter.

"MR. DUMBRILL: I would object to the statement as highly prejudicial and improper.

"THE COURT: Well, the jury is instructed to disregard the last statement of Mr. Whitley."

Mr. Whitley was the prosecuting attorney and Mr. Dumbrill was appellant's attorney.

Subsequently, the court offered to give an instruction advising the jury that the statement of Mr. Whitley should not be considered during deliberation, but Mr. Dumbrill objected to the giving of the instruction under the probability that it would emphasize the point rather than ameliorate it. Subsequent to the verdict, the statement was made the basis for appellant's motion for a new trial. The motion was denied.

DENIAL OF DUE PROCESS BECAUSE ARREST WAS IN SOUTH DAKOTA

In support of the first issue presented by appellant in this appeal, he argues that the Wyoming officers were not in fresh pursuit when he was arrested in South Dakota and that the arrest was therefore illegal. He further contends that he was not afforded a hearing pursuant to the South Dakota statutes then in effect[1] and was denied due process of law. Finally, he argues that the items introduced into evidence which were obtained at the time and place of arrest should have been excluded from evidence inasmuch as they were obtained incident to an unlawful arrest. Appellant preserved his status to make such contentions by filing, on March 19, 1979, a motion to dismiss

1. Section 23–23–2, S.D. Compiled Laws Ann. 1967 provides:

"* * * The term 'fresh pursuit' as used in §§ 23–23–2 to 23–23–4, inclusive, shall include fresh pursuit as defined by the common law, and also the pursuit of a person who has committed a felony or who is reasonably suspected of having committed a felony. It shall also include the pursuit of a person suspected of having committed a supposed felony, though no felony has actually been committed, if there is reasonable ground for believing that a felony has been committed. Fresh pursuit as used herein shall not necessarily imply instant pursuit, but pursuit without unreasonable delay."

Section 23–23–4, S.D. Compiled Laws Ann. 1967 provides in pertinent part:

"* * * Any member of a duly organized state, county, or municipal peace unit of another state of the United States who enters this state in fresh pursuit, and continues within this state in such fresh pursuit, of a person in order to arrest him on the ground that he is believed to have committed a felony in such other state, shall have the same authority to arrest and hold such person in custody, as has any member of any duly organized state, county or municipal peace unit of this state, to arrest and hold in custody a person on the ground that he is believed to have committed a felony in this state. * * *"

Section 23–23–5, S.D. Compiled Laws Ann. 1967 provides:

"* * * If an arrest is made in this state by an officer of another state in accordance with the provisions of § 23–23–4 he shall without unnecessary delay take the person arrested before a magistrate of the county in which the arrest was made, who shall conduct a hearing for the purpose of determining the lawfulness of the arrest."

Section 23–23–6, S.D. Compiled Laws Ann. 1967 provides:

"* * * If the magistrate before whom a person is taken pursuant to § 23–23–5 determines that the arrest was lawful he shall commit the person arrested to await for a reasonable time the issuance of an extradition warrant by the governor of this state or admit him to bail for such purpose. If the magistrate determines that the arrest was unlawful he shall discharge the person arrested."

the charges on such grounds and a motion to suppress the evidence on such grounds. The motions were denied. Appellant also objected on such grounds to the introduction of the evidentiary items as they were offered into evidence.

 At common law, a law enforcement officer could arrest a felon or a suspected felon with or without a warrant in another jurisdiction only if he were in fresh pursuit of the felon or suspected felon. 5 Am.Jur.2d Arrest § 51, p. 743 (1962). As appellant notes, the validity of a warrantless arrest for the state offenses is determined by the law of the state in which the arrest occurred. *United States v. Morris*, 8th Cir. 1971, 445 F.2d 1233, cert. denied 404 U.S. 957, 92 S.Ct. 322, 30 L.Ed.2d 273 (1971); *State v. Coleman*, Mont., 579 P.2d 732 (1978). South Dakota, by statute, has enlarged upon the common law doctrine of fresh pursuit; and, in doing so, has defined "fresh pursuit" to "not necessarily imply instant pursuit, but pursuit without unreasonable delay." [2] Appellant argues that the delay from the time he was reported heading east on the bypass at 2:46 a. m. to the time the delivery driver reported his whereabouts at 3:27 a. m. prevented the pursuit from being "immediate" and "continuous." However, "fresh pursuit" is not so defined in the South Dakota statute. It only requires the pursuit to be "without unreasonable delay." We also recognize that the words "fresh" or "immediate" in characterizing the type of permissible pursuit are words of relevance in measurement of time, and are governed by the circumstances of the incident to which they pertain. This is exemplified by the many cases referred to by the parties which hold the pursuit to be, or not to be, fresh or immediate and which concern time delays from several minutes to an hour or two. Immediate or fresh pursuit does not require the pursuer to keep the pursued in sight. It does not require recognition by the pursued that he is being pursued. But it does require (as recited in the South Dakota statute) the pursuit to be undertaken without unreasonable delay.

The nature of the crime, the activities and location of the pursuer after receiving a report of the commission of the crime, the activities and location of the pursued after commission of the crime, whether or not the pursued had been identified or would escape, the extent and nature of the evidence connecting the pursued with the crime, and the potential for the pursued to cause immediate and additional injury or damage to others are examples of the circumstances to be considered in the determination as to whether or not the pursuit was without unreasonable delay. *State v. Tillman*, 208 Kan. 954, 494 P.2d 1178 (1972); *People v. Escudero*, 23 Cal.3d 800, 153 Cal.Rptr. 825, 592 P.2d 312 (1979); *White v. State*, 70 Miss. 253, 11 So. 632 (1892); *People v. Sandoval*, 65 Cal.2d 303, 54 Cal.Rptr. 123, 419 P.2d 187 (1966); *State v. Goff*, 174 Neb. 548, 118 N.W.2d 625 (1962); *Charnes v. Arnold*, Colo., 600 P.2d 64 (1979).

 The trial court has here determined that the circumstances were such that the pursuit was without unreasonable delay. It did not abuse its discretion in making this determination. During the 41-minute delay of which the appellant complains, the law enforcement officers were responding to the call which placed the situs of the crime at the country club. The call was received by the police who relayed it to the sheriff. The sheriff was in bed at the time; he dressed and went to the country club. After sending his deputy to check on the cars on the road, the sheriff went to a point southeast of the town where he "checked" a car and occupants. A highway patrolman had stopped the car, but it was not Kropatch's car and was occupied by "tourists looking for gas." About five minutes later, the sheriff received the radio message which resulted in his going to the place in South Dakota where he apprehended appellant. Newcastle is not a large community. The surrounding area is rural. There are not a great number of law enforcement officers in the county, and the available officers must be assigned to cover all hours of the day and night. Appellant and his

---

**2.** See § 23–23–2, S.D. Compiled Laws Ann. 1967, set forth in footnote 1, supra.

companions were reported to be intoxicated and to have used force against Kropatch. They had threatened to kill him. The law enforcement officers had reason to consider appellant and his companions dangerous to others. The trial court had ample basis to determine the pursuit to have been taken without unreasonable delay under all of the circumstances.

■ Appellant contends that he was deprived of due process of law by virtue of the fact that he was not taken before a magistrate of a South Dakota county in accordance with South Dakota law [3] to determine the lawfulness of his arrest. Appellant was afforded a timely preliminary hearing in Wyoming at which probable cause was established. Therefore, appellant's right to such under the Fourth Amendment of the United States Constitution was not violated. *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Further, the South Dakota law which provides that there be a magistrate hearing for one arrested in South Dakota after fresh pursuit, § 23–23–5, S.D. Compiled Laws Ann. 1967, results in either a discharge of the person if the arrest was unlawful or a commitment of the person, or release on bail, to await extradition.[4] In this instance appellant waived extradition [5], and the purpose of the hearing was nullified. It is of note that appellant was brought to Wyoming by the South Dakota officers—not by the Wyoming officers, and that he confirmed his oral waiver of extradition by executing a written waiver after arriving in Wyoming. The South Dakota officers left him in Wyoming under such circumstances.

Section 23–24–26, S.D. Compiled Laws Ann. 1967 provides that nothing in the waiver of extradition statutes:

3. See § 23–23–5, S.D. Compiled Laws Ann. 1967, set forth in footnote 1, supra.

4. See § 23–23–6, S.D. Compiled Laws Ann. 1967, set forth in footnote 1, supra.

5. Appellant argued that the waiver was not completely voluntary. However, not only was

" * * * shall be deemed to limit the rights of the accused person to return voluntarily and without formality to the demanding state, nor shall this waiver procedure be deemed to be an exclusive procedure or to limit the powers, rights or duties of the officers of the demanding state or of this state."

Appellant did just that. He exercised his right to return voluntarily and without formality to Wyoming.

Finally in respect to this aspect of the case, the United States Supreme Court has not seen fit to change the law established by it in 1886 to the effect that it is not a defense to a criminal prosecution that the defendant was brought into the jurisdiction illegally. *Ker v. State of Illinois*, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886); *Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952). Accord *Kingen v. Kelley*, 3 Wyo. 566, 28 P. 36 (1891). The indication in *United States v. Toscanino*, 2nd Cir. 1974, 500 F.2d 267, that such was a definite defense was specifically rejected by the same circuit in *United States ex rel. Lujan v. Gengler*, 2nd Cir. 1975, 510 F.2d 62.

Since the arrest was legal, the premise for appellant's contention that the items obtained incident thereto should have been excluded from evidence fails. In any event, the prejudicial nature of the receipt into evidence of such items is questionable inasmuch as appellant did not contest the fact that he took possession of such items and of the automobile. He so testified, but he contended that such possession was with the permission of Kropatch. See *Reeder v. State*, Wyo., 515 P.2d 969 (1973); and *Campbell v. State*, 589 P.2d 358 (1979).

### IMPROPER STATEMENT IN CLOSING ARGUMENT

■ In oral argument, appellant's only reference to this issue was to advise the

the factual determination made to the contrary in district court proceedings, but, on appeal, we view the evidence in a light favorable to the prosecution (see *Harris v. State*, 487 P.2d 800, supra). Such evidence reflects a voluntary waiver.

court that he had misapplied the doctrine of plain error to it inasmuch as the error was brought to the trial court's attention by objection immediately after the statement was made and inasmuch as the statement was made a basis for a motion for a new trial. Although acknowledging that plain error did not occur, appellant argued that the statement was prejudicial and harmful error.

Testimony concerning appellant's prior conviction was already before the jury—although it was admitted for impeachment purposes only. The statement of counsel was an isolated one. It was objected to immediately, and the jury was instructed to disregard it. Under the circumstances of this case, the immediate instruction to the jury to disregard the statement cured the error and rendered it harmless. *State v. Sorenson*, 34 Wyo. 90, 241 P. 705 (1925); *Simms v. State*, Wyo., 492 P.2d 516 (1972); *Jones v. State*, Wyo., 580 P.2d 1150 (1978).

Affirmed.