STATE OF NEBRASKA, APPELLEE, V. JAMES E. FERRELL, APPELLANT.

356 N.W.2d 868

Filed October 12, 1984.   No. 83-961.

Thomas M. Kenney, Douglas County Public Defender, and Victor Gutman, for appellant.

Paul L. Douglas, Attorney General, and Timothy E. Divis, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

The defendant, James E. Ferrell, was convicted of robbery and use of a firearm in the commission of a felony. He was sentenced to imprisonment for 15 years on count I and 2 to 5 years on count II, the sentence to run consecutively to the sentence on count I. The defendant was also adjudged to be a habitual criminal. He has appealed and contends that the district court erred in overruling his motion to suppress.

The record shows that the Ames Bank at 89th and Fort Streets in Omaha, Nebraska, was robbed at about 9:30 a.m. on July 12, 1983.

At approximately 9:37 a.m. a police radio broadcast reported the robbery at the Ames Bank and described a suspect car as yellow, possibly with Texas plates. Minutes later, a second broadcast reported that the suspect car possibly had Missouri plates. At this time Det. Sgt. Glenn Steimer relayed that he had seen a yellow car with Missouri plates driven by an older female eastbound on Interstate 680. These broadcasts were heard by Officer David Wilson, who then positioned his cruiser on the 30th Street entrance ramp to Interstate 680 to look for the suspect car. Seeing the car almost immediately, Officer Wilson followed it and turned on his red lights in an attempt to stop it; the driver of the car traveled approximately 1 mile and crossed the bridge into Iowa before stopping. At this time the defendant sat up in the passenger seat and attempted to exit the car. He was told to remain inside.

After other Omaha police officers arrived, Officer Wilson and Officer William Friend approached the car. Among other things in plain view were a gun inside a lady's open purse, an open gym bag jammed full of money, and a white cloth moneybag.

The defendant and the woman driver, Marianne McCormack, were arrested, and the suspect car towed to the Omaha police station. Numerous articles of clothing, including gloves and a ski mask, remained on the front seat of the car. With the permission of the driver of the car, a search was made

of the trunk of the car, yielding maps and various other pieces of evidence. Among the items found in the trunk was a sketch of the interior of the Ames Bank prepared by Marianne McCormack.

Marianne McCormack testified as a witness for the State that on the day before the robbery she drove around Omaha looking at banks. She further testified that she waited in her automobile while the defendant robbed the Ames Bank.

Iowa Code Ann. § 806.1 (West 1979) provides:

> Any member of a duly organized state, county, or municipal law enforcing unit of another state of the United States who enters this state in fresh pursuit, and continues within this state in such fresh pursuit, of a person in order to arrest the person on the ground that the person is believed to have committed a felony in such other state, shall have the same authority to arrest and hold such person in custody, as has any member of any duly organized state, county, or municipal law enforcing unit of this state, to arrest and hold in custody a person on the ground that the person is believed to have committed a felony in this state.

This statute section is followed by a definition of terms, Iowa Code Ann. § 806.5 (West 1979), stating:

> The term "fresh pursuit" as used in this division shall include fresh pursuit as defined by the common law, and also the pursuit of a person who has committed a felony or who is reasonably suspected of having committed a felony. It shall also include the pursuit of a person suspected of having committed a supposed felony, though no felony has actually been committed, if there is reasonable ground for believing that a felony has been committed. Fresh pursuit as used herein shall not necessarily imply instant pursuit, but pursuit without unreasonable delay.

In *State v. Goff*, 174 Neb. 548, 118 N.W.2d 625 (1962), this court defined "fresh pursuit" in light of Nebraska's identically worded fresh pursuit statute. The court defined "fresh pursuit" as a " 'pursuit instituted immediately and with intent to reclaim or recapture, where an animal has escaped, or a thief is *fleeing* with stolen goods, etc.' (Emphasis supplied.)" *Id*. at

555, 118 N.W.2d at 630. The court emphasized that the individual sought must be attempting to escape or fleeing to avoid an arrest, or at least have knowledge that he was pursued, and each case must be determined by the circumstances.

The requirement of "flight" was clearly satisfied in this case. The robbery was reported at 9:37 a.m., and the arrest was made between 9:45 and 9:50 a.m. Furthermore, the driver testified that "right after the bridge I realized that there was a police car behind us that was trying to stop us."

The defendant contends, however, the pursuit was valid only if Officer Wilson had probable cause to make an arrest at the time he crossed into Iowa.

This is too strict an interpretation of the statute which authorizes pursuit of a person "who is reasonably *suspected* of having committed a felony." (Emphasis supplied.) This is sufficient to authorize an investigatory stop. *State v. Ebberson*, 209 Neb. 41, 305 N.W.2d 904 (1981).

"Fresh pursuit" is "a relative term and has reference to time or distance, or both, depending on the facts of the case." *Reyes v. Slayton*, 331 F. Supp. 325, 327 (W.D. Va. 1971).

The history and purpose of the fresh pursuit statutes were stated in *Hutchinson v. State*, 38 Md. App. 160, 168, 380 A.2d 232, 236 (1977), as follows:

> "At the present time our most desperate criminals head straight across state lines after the commission of a crime, knowing that there is comparative safety beyond the border. For in the foreign state the pursuing officer from the state wherein the crime was committed is, in general, no longer an officer. This abnormality, so contrary to all justice and reason, is remedied in a simple manner by the Fresh Pursuit Act. Thereunder, the moment an officer in fresh pursuit of a criminal crosses a state line, the state he enters will authorize him to catch and arrest such criminal within its bounds. . . ."

The court concluded:

> Accordingly, we hold that the statute was intended to permit any member of an organized peace unit of any State to enter in fresh pursuit; to continue in fresh pursuit within the District; and to arrest the person pursued,

whom he has probable cause to believe, at the time of arrest, committed a felony in the place of the officer's jurisdiction.

(Emphasis omitted.) *Id*. at 172, 380 A.2d at 238. See, also, *State v. Tillman*, 208 Kan. 954, 494 P.2d 1178 (1972) (where police chasing robbers across the Missouri line were supplied with missing factor essential to probable cause only after they had entered the foreign state).

In *Charnes v. Arnold*, 198 Colo. 362, 600 P.2d 64 (1979), immediately following an accident, an officer received a description of a hit-and-run driver and a description of his car, including the license plate number. The officer ran a check on the license number and learned that it was registered to the defendant, who lived in a neighboring jurisdiction. The officer drove to that address, where he saw the defendant pull into his driveway. The lower court held that these actions did not constitute fresh pursuit because the officer "did not pursue the suspect's trail but merely followed a hunch." *Id*. at 364, 600 P.2d at 65. Reversing, the Colorado Supreme Court utilized its statutory definition of fresh pursuit, which is similar to Iowa's. The court explained that the plain language from the statutes and cases from other jurisdictions indicate three criteria to be used in an analysis of fresh pursuit: (1) That the police act without unnecessary delay; (2) That the pursuit must be continuous and uninterrupted, but there need not be continuous surveillance of the suspect nor uninterrupted knowledge of his whereabouts; and (3) That there be a relationship in time between the commission of the offense, the commencement of the pursuit, and the apprehension of the suspect.

The defendant further contends that the officers violated another provision of the fresh pursuit law when they failed to take the defendant before an Iowa magistrate. This, it is argued, made the arrest illegal and prohibited the use in court of the physical evidence obtained.

The applicable Iowa statute, Iowa Code Ann. § 806.2 (West 1979), provides:

Procedure following arrest

If an arrest is made in this state by an officer of another

state in accordance with the provisions of section 806.1, the officer shall without unnecessary delay take the person arrested before a magistrate of the county in which the arrest was made, who shall conduct a hearing for the purpose of determining the lawfulness of the arrest. If the magistrate determines that the arrest was lawful the magistrate shall commit the person arrested to await for a reasonable time the issuance of an extradition warrant by the governor of this state or admit the person to bail for such purpose. If the magistrate determines that the arrest was unlawful the magistrate shall discharge the person arrested.

The statute prescribes a procedure to be followed after an arrest has been made. A violation of the statute does not affect the validity of the arrest which is complete before the statute has any application.

In *State v. Bonds*, 98 Wash. 2d 1, 653 P.2d 1024 (1982), *cert. denied* 464 U.S. 831, 104 S. Ct. 111, 78 L. Ed. 2d 112 (1983), the court held that the summary removal of an arrestee from Oregon to Washington did not make the arrest illegal and require the suppression of a confession even though the extradition statute had been ignored. The court said:

> [S]uch illegality does not constitute a violation of due process. *Gerstein v. Pugh*, 420 U.S. 103, 43 L. Ed. 2d 54, 95 S. Ct. 854 (1975); *Frisbie v. Collins*, 342 U.S. 519, 96 L. Ed. 541, 72 S. Ct. 509 (1952); *Mahon v. Justice*, 127 U.S. 700, 32 L. Ed. 283, 8 S. Ct. 1204 (1888); *Ker v. Illinois*, 119 U.S. 436, 30 L. Ed. 421, 7 S. Ct. 225 (1886). Nor, in our opinion, does it constitute reason for the operation of the exclusionary rule. The summary removal of defendant into Washington took only a few minutes and was accomplished peacefully, without threats and with defendant's concurrence. The improper interstate rendition was merely incidental to the arrest and represented no new intrusion into defendant's privacy. It represented more of an affront to the rights of the State of Oregon than of the defendant.

*Id.* at 14, 653 P.2d at 1032.

In *Jackson v. Olson*, 146 Neb. 885, 899, 22 N.W.2d 124, 132

(1946), this court said:

"[I]t is settled by the decisions of this court that . . . there is nothing in the Constitution, treaties or laws of the United States which exempts an offender, brought before the courts of a State for an offence against its laws, from trial and punishment, even though brought from another State by unlawful violence, or by abuse of legal process."

See, also, *State v. Costello*, 199 Neb. 43, 256 N.W.2d 97 (1977).

The defendant's final argument is that the driver-owner's consent to search the trunk of the automobile was invalid. The determination of whether a consent to search is voluntarily given is a question of fact, and voluntariness is to be determined from the totality of the circumstances. *State v. Van Ackeren*, 194 Neb. 650, 235 N.W.2d 210 (1975). Other than the fact that the driver was in custody when the consent form was signed, there is no evidence that the consent was other than voluntary.

On direct examination Marianne McCormack testified that she had given the police permission to search her car. She made no contention that the consent to search was not voluntarily given.

"The findings of fact in this respect will not be set aside on appeal unless they are clearly erroneous. In making that determination this court will take into consideration the advantage of the district court in having heard the oral testimony." *State v. Garcia*, 216 Neb. 769, 773, 345 N.W.2d 826, 829 (1984).

From our examination of the record we find that the motion to suppress was properly overruled.

There is a plain error as to the sentence on count II. The minimum sentence for a person convicted as a habitual criminal is imprisonment for 10 years. Neb. Rev. Stat. § 29-2221 (Reissue 1979). See *State v. Gaston*, 191 Neb. 121, 214 N.W.2d 376 (1974). The sentence on count II was erroneous.

The sentence and judgment on count I are affirmed. The sentence on count II is vacated and the cause remanded for imposition of a proper sentence.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED FOR RESENTENCING.