# IN THE SUPREME COURT OF IOWA

No. 122 / 06-1905

Filed December 7, 2007

**STATE OF IOWA,**

Appellant,

vs.

**JORDAN HEATH DENTLER,**

Appellee.

_____

Appeal from the Iowa District Court for Wayne County, Arthur E. Gamble, Judge.

The State appeals the district court order suppressing evidence obtained subsequent to a violation of Missouri's Fresh Pursuit Statute. **REVERSED AND REMANDED.**

Thomas J. Miller, Attorney General, Bridget A. Chambers and Mary E. Tabor, Assistant Attorneys General, and Alan M. Wilson, County Attorney, for appellant.

Dustria A. Relph of Chambers Law Firm, Corydon, for appellee.

**APPEL, Justice.**

In this case, we must determine whether evidence of alcohol intoxication should be excluded in a criminal proceeding where Iowa law enforcement officers pursued a suspect into Missouri, arrested the suspect in that state, returned the suspect directly to Iowa without first presenting the accused to a Missouri magistrate as required by Missouri's Fresh Pursuit Statute, and thereafter obtained further incriminating evidence. The district court granted the defendant's motion to suppress. Under the facts of this case, we hold that the district court erred in applying the exclusionary rule. The decision of the district court, therefore, is reversed.

### I. Facts and Prior Proceedings.

The facts in this case are not disputed. In the summer of 2006, Jordan Dentler and a friend took Dentler's newly repaired Camero race car out for a test drive. Dentler drove the car along State Line Road in Wayne County, where he "tested the speed of his car and how it was running" and "peeled around." Wayne County sheriff's deputy Charles Henderson was alerted to the scene by the roar of the engine, observed Dentler's driving, and pursued the vehicle. Although Henderson signaled with his lights and siren, Dentler did not pull over until shortly after they passed into Missouri.

Henderson called for the assistance of Missouri authorities. Two Missouri law enforcement officers arrived shortly thereafter and assisted in "clearing" the vehicle. An open can of beer was found in the car, which was consistent with a beer can Henderson observed along the side of the road during the pursuit.

Another Wayne County sheriff's deputy also arrived at the scene. This deputy noticed a strong smell of alcohol on Dentler's breath and observed that his eyes were bloodshot and watery. The deputy also elicited

an admission from Dentler that he had been drinking an unknown quantity of beer.

At the scene, the Iowa and Missouri officers had a discussion about who would retain Dentler. The Missouri deputies advised Henderson, "Well, you can keep him." Henderson then admitted, "I didn't know how that worked, since I chased him, do I get to keep him?" The Missouri deputy then replied, "As far as I'm concerned, you can." It appears that none of the officers were aware of the proper procedures under Missouri law applicable to the situation.

Henderson issued a citation to Dentler for reckless driving, open container-driver, operating a motor vehicle without registration, and violation of financial liability coverage. He read the defendant his *Miranda* rights, placed him under arrest, and transported Dentler back to the Wayne County Sheriff's Department in Corydon, Iowa. There, Dentler performed field sobriety tests and voluntarily submitted to a Datamaster Cdm test.

In addition to the traffic violations, the State charged Dentler with operating a motor vehicle while intoxicated, second offense, in violation of Iowa Code section 321J.2(2)(*b*) (2005). Dentler then moved to exclude all evidence obtained after his removal from Missouri. He argued that since he was not presented to a Missouri magistrate prior to his removal as required by Missouri's Fresh Pursuit Statute, Missouri Revised Statutes section 544.155, all evidence obtained after his removal should be suppressed.

Finding Iowa law silent on the issue, the district court turned to cases from other jurisdictions. The district court found the Pennsylvania case of *Commonwealth v. Sadvari*, 752 A.2d 393 (Pa. 2000), which held that the exclusionary rule applied where the out-of-state officers failed to present a defendant to a magistrate in the state of arrest prior to extradition, the most

persuasive. The district court, therefore, granted the motion to suppress. We granted the State's application for discretionary review to resolve this issue of first impression in Iowa.

## II. Standard of Review.

We review a district court's decision to admit or exclude evidence for abuse of discretion. To "the extent admission of evidence turns on the interpretation of a statute" or other legal issue, however, our review is for correction of errors at law. *State v. Kjos*, 524 N.W.2d 195, 196 (Iowa 1994).

## III. Discussion.

The sole issue presented in this case is whether the evidence obtained by Iowa officials after Dentler's arrest in Missouri should be excluded because of the failure of Iowa authorities to present Dentler to a Missouri magistrate. As noted by the district court, there is no Iowa case law on the issue of whether violation of a magistrate provision in a fresh pursuit statute requires application of the exclusionary rule to evidence obtained after the violation. The courts in other states are split.

Some courts have applied the exclusionary rule. For instance, in *Sadvari*, the Pennsylvania Supreme Court held that the violation of the magistrate provision of Delaware's Fresh Pursuit Statute required application of the exclusionary rule "as a demonstration of comity" and vindication of Delaware's "important state interest" in its "sovereignty." *Sadvari*, 752 A.2d at 399. The *Sadvari* court also believed that the exclusionary rule was necessary in light of the "unlawful seizure" of the defendant. *Id.*; *see also People v. Jacobs*, 385 N.E.2d 137, 140 (Ill. App. Ct. 1979) (suppressing evidence for failure to take defendant before an Iowa magistrate as required by Iowa's Fresh Pursuit Statute).

Other courts, however, have refused to apply the exclusionary rule for such violations. The leading case is *State v. Ferrell*, 356 N.W.2d 868 (Neb. 1984). In *Ferrell*, the defendant was arrested by Nebraska police officers in Iowa, but was not presented to an Iowa magistrate as required by Iowa's Fresh Pursuit Statute, Iowa Code chapter 806. The *Ferrell* court emphasized that the validity of the arrest was not affected by the failure to present the accused to an Iowa magistrate. *Ferrell*, 356 N.W.2d at 871. The court further held that the failure to comply with the magistrate provision did not amount to a due process violation that required the exclusion of evidence. *Id.*; *see also State v. Bonds*, 653 P.2d 1024, 1031 (Wash. 1982) (*en banc*), *cert. denied,* 464 U.S. 831, 104 S. Ct. 111, 78 L. Ed. 2d 112 (1983) (holding that an arrest in Oregon by Washington officers and removal to Washington without presentation to an Oregon magistrate did not require exclusion of subsequently obtained evidence).

This court has not hesitated to apply the exclusionary rule where fundamental constitutional rights have been violated. *See State v. Bentley*, 739 N.W.2d 296 (Iowa 2007); *State v. Harris*, 741 N.W.2d 1 (Iowa 2007). We have embraced the exclusionary rule to ensure that fundamental constitutional rights do not become dead letter, to deter future police misconduct, and to prevent the integrity of the courts from being undermined through the admission of unlawfully obtained evidence. Our strong commitment to the exclusionary rule where constitutional violations are present is further demonstrated by our unequivocal rejection of a good faith exception to the exclusionary rule for violation of the Iowa Constitution. *State v. Cline*, 617 N.W.2d 277, 290 (Iowa 2000), *overruled on other grounds by State v. Turner*, 630 N.W.2d 601, 606 n.2 (Iowa 2001).

Our older cases indicate that the exclusionary rule should ordinarily apply only where there has been a constitutional violation or where a statutory right has been violated and the statute itself specifically requires exclusion. *State v. Garrow,* 480 N.W.2d 256, 258 (Iowa 1992); *State v. Johnson,* 318 N.W.2d 417, 437 (Iowa 1982). The rationale for limiting the statutory application of the exclusionary rule to occasions where the legislature specifically required exclusion is based upon the notion that the failure of the legislature to include an exclusionary requirement is significant indication of legislative intent.

More recently, however, we have expanded the type of statutory violations that may trigger application of the exclusionary rule. For example, where statutory mandates involve fundamental rights, usually with constitutional overtones, we have held that the exclusionary rule should apply even though not expressly required by the legislature. *See State v. Moorehead*, 699 N.W.2d 667, 673–75 (Iowa 2005) (holding that the exclusionary rule applies to violations of the statutory right to contact family upon arrest); *State v. Buenaventura,* 660 N.W.2d 38, 45–46 (Iowa 2003) (holding that violation of the Vienna convention's notification requirements did not warrant exclusion because the defendant's fundamental rights were not implicated); *see also Sanchez-Llamas v. Oregon,* 126 S. Ct. 2669, 2681, 165 L. Ed. 2d 557, 577 (2006) (noting that the United States Supreme Court has suppressed evidence for statutory violations that implicated important Fourth and Fifth Amendment interests).

In addition, even where the statutory right might not be considered fundamental, we have applied the exclusionary rule to statutory violations involving police misconduct. For example, in *State v. Kelly*, 430 N.W.2d

427, 430 (Iowa 1988), we held that a breath test given more than two hours after arrest in violation of chapter 321J was admissible. In contrast, in *Kjos*, we held that a breath test administered more than two hours after arrest in violation of the same statute was subject to the exclusionary rule because the police made the false threat of license revocation if the accused failed to comply. *Kjos*, 524 N.W.2d at 197. *See generally* George F. Dix, *Nonconstitutional Exclusionary Rules in Criminal Procedure*, 27 Am. Crim. L. Rev. 53, 74–109 (1989).

In this case, Dentler claims the exclusionary rule should apply because his due process rights were violated by the failure of the deputies to present him to a Missouri magistrate as required by Missouri's Fresh Pursuit Statute. Specifically, Dentler argues that if he had been presented to a Missouri magistrate rather than simply being transported to Iowa, he would have been released for lack of probable cause. *State v. Lloyd*, 513 N.W.2d 742, 743 (Iowa 1994) (concluding that law of asylum state applies in determining legality of arrest under fresh pursuit statute).

We disagree. Prior to his transport to Iowa, officers observed Dentler driving erratically. He then eluded officers for a time by driving into Missouri. The deputies also discovered two open cans of beer. When questioned, Dentler admitted to consuming an unknown quantity of beer. His breath smelled of alcohol, and his eyes were watery. Under the law of Missouri, we are convinced that the above facts would have supported a finding of probable cause had Dentler been taken before a Missouri magistrate. *Rain v. Dir. of Revenue, State of Missouri*, 46 S.W.3d 584, 587 (Mo. App. Ct. 2001).

Further, it is undisputed that Dentler was promptly taken before an Iowa judge. Dentler was fully afforded the opportunity to test the validity of

his arrest before a neutral magistrate promptly after his arrest. As a result, we do not find a due process violation as claimed by Dentler. *Gerstein v. Pugh*, 420 U.S. 103, 116, 95 S. Ct. 854, 864, 43 L. Ed. 2d 54, 67 (1975); *Six Feathers v. State*, 611 P.2d 857, 862 (Wyo. 1980). Instead, the real issue is whether a violation of Missouri statutory law warrants exclusion of evidence in this case. *Cooper v. California*, 386 U.S. 58, 61, 87 S. Ct. 788, 790, 17 L. Ed. 2d 730, 733 (1967) (noting that mere violations of state law do not establish a due process claim).

In analyzing the issue of whether the exclusionary rule applies, the first question under Iowa law is whether the statute specifically requires the exclusion of evidence. An examination of the Missouri statute reveals that there is no such specific language.

The next question under our case law is whether the statute involves a fundamental right of the defendant. We conclude that the magistrate provision, under the facts of this case, did not involve a fundamental right of the defendant. We hold that in order for a statutory right to be considered fundamental for purposes of the exclusionary rule, the right must be grounded in fundamental fairness toward the accused. *Commonwealth v. Lyons*, 492 N.E.2d 1142, 1145 (Mass. 1986); *State v. Burris*, 679 A.2d 121, 127 (N.J. 1996). As a result, a statutory violation that is at best only remotely related to the gathering of evidence does not ordinarily trigger application of an exclusionary rule. *Sanchez-Llamas*, 126 S. Ct. at 2681, 165 L. Ed. 2d at 578.

Here, the main purpose of the magistrate provision in Missouri's Fresh Pursuit Statute is not to protect the individual from overreaching evidence-gathering techniques by government prosecutors, but to vindicate the sovereign rights of the State of Missouri. *State v. Wagner*, 359 N.W.2d

487, 489 (Iowa 1984); *Ferrell*, 356 N.W.2d at 872. To the extent an ox is being gored in this case, it belongs to Missouri, not Dentler. The magistrate provision in Missouri's Fresh Pursuit Statute does not implicate fundamental, personal interests of the defendant.

Ordinarily, a party seeking to invoke the exclusionary rule may not vicariously assert the rights of another. *Rakas v. Illinois*, 439 U.S. 128, 148, 99 S. Ct. 421, 433, 58 L. Ed. 2d 387, 404 (1978); *Alderman v. United States*, 394 U.S. 165, 174, 89 S. Ct. 961, 966–67, 22 L. Ed. 2d 176, 187 (1969). Moreover, even if Dentler could vicariously assert the sovereign rights of the State of Missouri, it is undisputed that the Missouri officers on the scene acquiesced to the action. While such acquiescence by state law enforcement officials may not give rise to waiver or estoppel as a matter of law, it is a factor that militates against the need for application of the exclusionary rule.

We also note that Dentler makes no claim that a magistrate would have prevented Iowa authorities from proceeding against Dentler because of some fundamental public policy of the State of Missouri that conflicted with Iowa law. His sole claim is that Iowa officers lacked probable cause to arrest him in Missouri and that if he had been presented to a Missouri magistrate, he would have been released. As indicated above, we reject that claim.

A final potential basis for application of the exclusionary rule to a statute that does not explicitly require exclusion is police misconduct that aggravates the underlying statutory violation. *Kjos*, 524 N.W.2d at 197. Here, however, the record reveals no false representations of law designed to obtain evidence, only confusion on the part of both Missouri and Iowa constables regarding applicable legal requirements. The record also reveals

no suggestion or implication that the magistrate provision in Missouri law was willfully violated to advance the gathering of evidence against the accused.

Because Dentler seeks to apply the exclusionary rule to a statutory violation that does not involve fundamental rights, constitutional overtones, or false representations of law or other similar police misconduct, Dentler seeks an expansion of our current law regarding the application of the exclusionary rule. The main argument in favor of such an expansion is concern that without applying the exclusionary rule there will be insufficient deterrence to avoid future violations.

Because the benefits of violating the magistrate provision are so small, however, the incentive for future violations is not very high. If we are proven wrong in this assessment, the Missouri legislature may withdraw its authorization of Iowa peace officers to engage in fresh pursuit. Further, because this opinion is narrowly based on the unique facts of this case, law enforcement officials have no certainty that the exclusionary rule will be held inapplicable under a different state of facts, particularly where the record demonstrates willful misconduct. Finally, in the unlikely event that such violations become a recurrent problem, this court reserves the right to exercise its supervisory powers to exclude evidence in future cases. *United States v. Payner*, 447 U.S. 727, 735 n.7, 100 S. Ct. 2439, 2446 n.7, 65 L. Ed. 2d 468, 476 n.7 (1980); *People v. Wolf*, 635 P.2d 213, 217 (Colo. 1981); *Bonds*, 653 P.2d at 1032.

## IV. Conclusion.

For the above reasons, the suppression order of the district court is reversed and the case remanded to the district court for further proceedings.

**REVERSED AND REMANDED.**